LAURA E. SHIPPY v. THE VILLAGE OF AU SABLE.

*Municipal corporations—Construction of cross-walks—Discretion of authorities—Injury to infant.*

1. Village authorities have a perfect right, in the use of their discretion, which courts cannot review, to determine *how* their *cross-walks* shall be laid, and how access shall be obtained between the foot-walk and the wagon-way. The practice is general, if not universal, of having a sharp fall at the curb along the line of the sidewalk space which defines the division between sidewalk and street, and we know of no authority which prevents such a step from being made and maintained. *Williams v. City of Grand Rapids,* 59 Mich. 51.

2. In making walks and connections, the authorities, who are always supposed to use common judgment and fidelity, may generally be relied on to do what seems reasonably safe and cautious for people of all ages. But they may also fairly assume that parents will use such caution in taking young children along the highways as will guard them against such dangers as are not improbable.

Error to Iosco. (Tuttle, J.) Argued January 26, 1887. Decided April 21, 1887.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*William H. Simpson* (*Hanchett & Stark,* of counsel), for appellant.

*Elliott & McLean,* for plaintiff.

CAMPBELL, C. J. Plaintiff, who, at the time she received the injury sued for, was a child of not far from three years old, brought her action against defendant, alleging corporate neglect in maintaining a part of a cross-walk, about seven feet long, at a distance of several inches higher than the remainder of the cross-walk, so that plaintiff unavoidably fell from the part so elevated, and suffered serious injury.

The defense rested largely on the claim that there was no corporate liability for having the walk in the way in which it was actually placed. There were also some questions of evidence, and some complaints made concerning the charge. The jury rendered a verdict for $6,500.

The case is a peculiar one in some respects, and there are some matters on which it is not easy to understand the record. Witnesses described the surroundings on assumptions which were probably clearer to those in the court-room than they appear to be in the testimony reported. We have had difficulty in comprehending some leading features of the case, and especially in ascertaining the precise character of the walk in various parts as sidewalk or cross-walk, and this difficulty appears in the charge of the court, where sidewalk and cross-walk appear to be promiscuously referred to, as they were on the trial, in a way which would have been proper if the village had the same responsibility in regard to both. So, in the testimony concerning the location of the accident, a map not in the record is referred to, and the witness McDonald puts the accident at the north-west corner of the intersection of River and Stockman streets, yet on the east side of River street, and the declaration describes the walk as along the head of Stockman street where it intersects River street. These references seem as they read to be inconsistent, but there seems to have been a knowledge on the trial of the surroundings; and these variances, if they are variances, were probably overlooked in preparing the bill of exceptions. The difficulty is more serious, as it appears on page 49 of the record that plaintiff's counsel on the trial claimed that any passage in the street, whether dirt or artificial, was a cross-walk, and that the descent from the plank to it was a cause of complaint against the village.

Leaving these questions for the present, the circumstances as claimed by the testimony of plaintiff's witnesses were these: About dark, near 7 o'clock in the evening on the last

day of September, 1881, plaintiff's father and mother were going along the sidewalk, having a baby in a baby wagon with them, and plaintiff was running on 10 or 12 feet ahead alone. At the place in question, Mr. Solomon, who owned the corner property, had laid down a new walk over an old one, making it about four inches higher than the old one. Where this walk ended, it therefore left a step or descent that much higher than the old walk, and at this point plaintiff fell over and dislocated her hip, involving injury at the joint, and some permanent consequences of a serious nature.

From a comparison of testimony it would seem that this new walk terminated at what would usually be the curb of the highway, and beyond it, then or subsequently, a cross-walk extended, with the usual sloping sides, so as to prevent jolting of crossing teams, and this walk across the traveled track of the road was lower than the surface of the new walk which abutted on it, by the thickness of that structure, making a step down of a few inches. The child, running along until it reached this step, fell over it. Apart from this change of level, the new walk, built only for foot-passage, was entirely level, while the walk in the highway slanted down on each side, and thereby narrowed the level space on top, to enable wheels to pass over it without jarring. The point in question was on the transition line from the part confined to foot passengers to the part used by vehicles; and the contention, so far as it related to negligence in maintaining the passage in this condition, turned on the supposed duty of defendant to keep sidewalks and cross-walks on the same level where they join, or throughout. No other defect is alleged, and the accident was due to this, and to nothing else connected with the place and its surroundings, so far as alleged or appearing.

When the testimony was in, several rulings were sought by defendant, which were refused, and several charges were made which were objected to. The court was asked, under

various forms, to hold that the condition shown and relied on for recovery was not such a defect or lack of good repair as was contemplated by law. In refusing this, the court made some rulings, to be noticed presently, concerning the duties of villages in constructing, as well as in keeping in order, their ways and walks.

The confusion in the record concerning sidewalks and cross-walks makes this particular question, as one of law applicable to the facts, difficult of solution, as the bill of exceptions stands. The walk in question was built by a lot-owner, and not by the city, and seems to have been built by him as a part of his sidewalk. If it is a cross-walk, and not a sidewalk, it is to be regarded, by whomsoever built, as a city work, and the declaration so alleges it; if a sidewalk, and not a cross-walk, then it comes directly within the decision in *Williams v. Grand Rapids*, 59 Mich. 51, where it was held the municipality must use its own judgment about making cross-walks to connect with sidewalks. The present case was rather tried on the theory that the sidewalk must be lowered than that the cross-walk should be raised at the junction; but the declaration would sustain either view, and this is not very important.

In *O'Neil v. Detroit*, 50 Mich. 133, a question arose whether the space of walk between the outer street line and the curb at street corners, was properly to be regarded as sidewalk or cross-walk. On paved streets the walk down to the curb is usually built in all respects like a sidewalk, and the street from curb to curb has an entirely different style of cross-walk embedded in the pavement, and not rising above it. The necessities of a wagon road require that, whether a street is paved or not, the cross-walk must be quite different in its construction from an ordinary sidewalk. In that case it was made to appear that the city of Detroit, by long usage and by its legislation, had always constructed at its own expense all walks lying between the intersection of the outer street

lines and the curb, and had only required lot-owners to lay their sidewalks up to that intersection. It was held by this Court that, by this practical construction of its charter, the city had recognized these walks as cross-walks to be built and maintained by the city; and, as the practice was not unreasonable, the city might fairly be held bound by it.

This record is silent concerning any usage or legislation by defendant on this subject. As held in the case just referred to, the statute fixing liability does not itself define what are cross-walks and what are not, and there is no State law which does so. But the perils on cross-walks, between curbs, are in most respects similar to those in the rest of the street, although there are some differences. Perhaps one reason for holding the corporation for cross-walks, and not for sidewalks, was that sidewalks are usually built at private expense, and the others by the public. In the present case, so far as anything appears about it, this new walk was a private and not a public charge. We cannot determine this from the record, and we shall not attempt to do so. But the question is an important one in its bearings.

Assuming it to be a cross-walk, and not a sidewalk, there can be no doubt, under numerous decisions cited on the argument, and decided in this Court, that the village authorities have a perfect right, in the use of their discretion, which courts cannot review, to determine how their cross-walks shall be laid, and how access shall be obtained between the foot-walk and the wagon-way. The practice is general, if not universal, of having a sharp fall at the curb along the line of the sidewalk space which defines the division between side-walk and street. There is usually a similar drop at street crossings for surface drainage, which would require the upper walk and the street crossing, if made continuous, to be made so by bridging. There is no authority that we are aware of which prevents such a step from being made and maintained. It is among the commonest things found in cities and vil-

lages. The gutters parallel with sidewalks, and generally bordering them, are never covered throughout, and all persons passing into the street, except at a corner crossing, must step down to reach it. The danger of falling would be the same whether at a crossing or elsewhere; and, whatever might be expected of grown persons, small children left to themselves would be quite as likely to stray off to the one place as to the other.

In this case the court charged the jury that the responsibility laid on corporations by the statute under which this suit was brought relates as well to the mode of construction of the crossing or of the highway as it does to the condition it is thereafter in.

"Now, what would be a reasonable mode of building a cross-walk in one city might not be in another. There might be in some cities narrow streets and steep declivities, which would make it absolutely necessary to put some steps in a sidewalk, or in a road, or on a cross-walk. It is for you, gentlemen of the jury, under all the testimony in the case, to say whether it was reasonable in the village of Au Sable to put that break in the sidewalk, as testified to, or not. What might be a reasonable condition for an adult person might not be for a child. Our children have as much right on our streets and highways as adult persons. They have a right to walk there, and have a right to play there; and, if the walk or highway is in a condition unreasonable and unsafe, why, if damage results, the child is entitled to those damages."

And in a subsequent part of the charge this further instruction was given:

"Now, upon the question of damages, as I have already stated, what might be a reasonable condition for a walk to be in for a grown person might not be for a child. The age of the child must be taken into consideration in considering whether the walk was in a reasonable condition or not."

This last clause occurs in a discussion of what should be the rule of damages, and would in that connection lead to some inference that the damages were to be measured more or

less by the fault of the defendant, and not merely by the injury to plaintiff.

From this charge it is evident that the attention of the jury was chiefly, if not entirely, turned to the faulty plan of the walk, and not to its being an injurious interference with an existing walk, rendering it unsafe. The reasoning in the rest of the charge leaves no doubt of what was in the mind of the court.

It is evident from the language of the court, above quoted, as well as from other remarks in the charge, that the able judge who tried the case was of opinion that the cases, decided in this Court, of *Detroit v. Beckman*, 34 Mich. 125, and *Lansing v. Toolan*, 37 Id. 152, had ceased to be applicable since the statute of 1879, under which this suit was brought. Since the trial of this cause, two decisions of this Court have been made which hold otherwise. The case of *Williams v. City of Grand Rapids*, 59 Mich. 51, not only resembles this case very closely in its facts, but resembles it precisely in the questions laid before the jury. It was there held to be beyond the authority of courts to interfere with the action of cities in determining where to build walks, or upon what plan. Reference was there had to these earlier decisions. In *Davis v. City of Jackson*, 61 Mich. 538, the same rule was laid down concerning the construction of public ways and surface gutters. In all but the last-named case the injury was caused by falling from a level surface into a depression made or left adjacent to or across it, and in each it was held there was no liability.

The reasons for this are fully set out in those cases. All municipal ways must be put under the supervision of the public authorities. It is for them to decide what works shall be undertaken, and how the general safety and convenience require them to be built. There must be some final arbiter as to the proper way of doing this. In many cases, plans more or less formal must be considered, and taxes or assessments

levied to complete them.   If it can be referred to a jury to determine on the propriety of such action, there will be as many views as there are juries, and it can never be definitely known when a municipality is safe.   It is beyond human ingenuity to devise a plan which is not capable of danger to heedless persons, or to young children, who cannot be expected to appreciate the danger.   Reasonable safety is what the law requires, and no more.   *Harris v. Township of Clinton,* 64 Mich. 447.

In the present charge this matter was carried to extreme results; for it was practically laid down that anything that was not safe for children was unlawful.   Such a fall as this child met with might have happened to her upon any stair or step, or upon any curb-stone, or from stumbling against anything large or small which she encountered.   The injury itself was extreme and uncommon, if not extraordinary.   In making walks and connections, the authorities, who are always supposed to use common judgment and fidelity, may generally be relied on to do what seems to be reasonably safe and cautious for people of all ages.   But they may also fairly assume that parents will use such caution in taking young children along the highways as will guard them against such dangers as are not improbable.   Had these walks been connected by a bridge, the child might about as easily have fallen over the side or curb.   The rule laid down is impracticable, and there is probably no city where it is or could be followed.   Even an unbroken dead level of streets and walks would not entirely prevent the danger, while it would introduce many worse ones, which the usual division of ways for foot and other travel, with paving and drainage, would necessarily obviate.

The misfortune of an injury to a young child appeals so strongly to our sympathies that it is natural to infer it ought to have been prevented.   But such feelings, while they are generous in some aspects, are very apt to lead to injustice to

those who are not legally in fault, if they are allowed to affect the judgment. Under the charge given as to the duty to prevent danger to children, the fact that this child was actually injured almost necessarily led to a verdict. Upon the theory which governed the charge, that the village was responsible for any defect in the planning of the walk, there should have been no recovery. The ambiguity pointed out in the earlier part of this opinion, which is quite similar to that which existed in the first record of *Williams v. City of Grand Rapids*, 53 Mich. 271, as explained in the last report of that case (59 Id. 56), renders it impossible for us to say whether any other ground of action may have existed, and we cannot, therefore, say the case should have been taken from the jury.

We are not prepared to say that actual outlay for medical help should not enter into the estimate of damages; but the testimony introduced on this subject was so vague and peculiar that it should not have been allowed to enter into the account, if at all, without such discrimination as would have prevented misconception. It furnished no *data* for drawing a line between the parental care, for which the law can allow no money compensation, and such further matters as would be allowable in a claim against the child. We do not think this record would warrant us in going fully into that subject.

The judgment must be reversed, and a new trial granted.

CHAMPLIN and MORSE, JJ., concurred. SHERWOOD, J., concurred in the result.