85 280
87 416
85 280
92 203
85 280
100 105
100 111
85 280
108 312
85 280
111 4
111 193
85 280
121 679
85 280
139 ¹317
85 280
138 ³ 4
85 280
f141 ³281

LAURA E. SHIPPY, BY HER NEXT FRIEND, v. THE VILLAGE OF AU SABLE.

[See 65 Mich. 494.]

*Pleading—Sufficiency of declaration—Waiver—Municipal corporations—Defective cross-walk—Infants—Contributory negligence.*

1. The objection that an amended declaration, which was not demurred to, is not sufficiently specific in describing the injury sustained by the plaintiff within the ruling in *Shadock v. Plank-road Co.*, 79 Mich. 7, to which the attention of the counsel for appellant was called after the second trial, is held to come too late, not being raised on either trial or on the motion for a new trial.

2. Where a declaration is amended to meet the case as developed on the first trial, the jury on a second trial are properly instructed that they have nothing to do with what happened on the first trial, but are to try the case upon the amended pleadings, and determine what the facts are from the evidence admitted during the second trial.

3. A child less that four years of age cannot be guilty of negligence, and the greater weight of authority in this country is opposed to the contention that the negligence of the parents can be imputed to such a child when the suit is brought in the child's behalf, and not that of the parents. *Battishill v. Humphreys*, 64 Mich. 503–511; *Westbrook v. Railroad Co.*, 14 Amer. St. Rep. 587, and note.

4. When the authorities of a village or city have seen fit, in the first place, in their plan of improvements, to make a sidewalk and cross-walk meet on a level, and they have been so used by the public, a private citizen has no right to interfere with such plan, and, in remodeling his sidewalk, create a step or fall to the cross-walk. Such a step is an obstruction, which it is the duty of such authorities to remove; and if they fail to do so after notice, the municipality becomes responsible for the obstruction, and for all damages resulting therefrom.

Error to Wayne. (Gartner, J.) Argued November 14, 1890, and reargued February 27, 1891. Decided April 17, 1891.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Henry & Cornville* (*Hanchett, Stark & Hanchett* and *William H. Simpson,* of counsel), for appellant.

*Elliott & McLean* (*O. E. M'Cutcheon,* of counsel), for plaintiff.

[The points of counsel are fully stated in the opinion. —REPORTER.]

MORSE, J. This case was before this Court in the January term of 1887, and a judgment in favor of the plaintiff reversed, and a new trial granted. *Shippy v. Village of Au Sable,* 65 Mich. 494. The case was then transferred from the Iosco to the Wayne circuit court. The declaration was amended in several respects, and the parties went to trial before Hon. George Gartner, with a jury, which trial resulted in a verdict for $10,500 for plaintiff.

When the case was here before, the chief neglect imputed to the defendant was the keeping and maintaining of a portion of the cross-walk, to wit, for about seven feet, "above and over the remaining portion of the cross-walk;" thereby rendering the same in that particular place in a condition unsafe for public travel. We held, under the declaration and claim there made, that the defendant was not liable for an injury occasioned by a fall or step in the cross-walk, at the curb of the highway, a few inches, when such fall or step was a part of the original plan of the cross-walk. But, under the amended declaration and the plaintiff's proofs upon the last trial, it appears that the defect complained of was not a part of the original cross-walk, or of any subsequent plan of it, but was caused by the interference of one

Selig Solomon, and the neglect of the city authorities to remedy it when it was brought to their notice. The declaration avers, and the proofs show, that a cross-walk was built and maintained by the village across Stockman street, by and along the westerly side of River street, where such street intersected Stockman street; that such cross-walk was planned and constructed by said village even and level with the sidewalk on the westerly side of said River street, so that the surface of the sidewalk, where it joined the cross-walk, formed a continuous level with the surface of the cross-walk. The accident happended to the child, the plaintiff, in September, 1881. About two months before that time Selig Solomon, who owned the corner lot bounded southward by Stockman street and eastward by River street, built a new sidewalk along his premises on his River-street front. He built this new sidewalk on top of the old walk, by placing 2x4 scantling on the old walk, and laying two-inch plank on the scantling. He did not stop at the end of the old sidewalk, but extended the new walk in the same manner from four to six feet beyond the corner, and upon and over the cross-walk, leaving a step or jog down onto the old cross-walk. The old cross-walk, at and beyond the place where this new sidewalk was built over it, was broken, decayed, and misplaced. The step down was, as testified by different witnesses, from 4½ to 18 inches. This condition of things remained for at least two months, and the city authorities had notice of it.

On September 30, 1881, the plaintiff, a little girl about three years old, about dark in the evening, fell off this step into the broken cross-walk, and was seriously and permanently injured and crippled. Her father and mother were going from their home down town to make some purchases. The father was leading plaintiff, and the mother was wheeling a baby wagon, in which was a

younger child, a baby. About 10 feet from the place of the accident the father was stopped by one Scott Buell, and engaged in conversation. The plaintiff let go his hand, and ran ahead, and fell off the step. There is no doubt but the accident was caused by the step or jog caused by Solomon in the building of his new sidewalk. It is also certain enough that it was on a cross-walk within the lines of Stockman street. It is claimed by the plaintiff that the broken and misplaced condition of the old cross-walk at the point of the step also contributed largely to the injury. This is denied by the defendant, and testimony was submitted, in rebuttal of this claim of plaintiff, showing that the old cross-walk was in a good and sound condition. The jury, however, in answer to a special question, found that "at the foot of the step the cross-walk was broken up."

The first 10 assignments of error, argued together by the defendant's counsel in their principal brief, relate to the admission of evidence of hip disease, injury to hip and leg, and pain and suffering, and to the refusal of the court to strike out such evidence, and the charge of the court upon that subject. The principal objection now made to this evidence is based upon the want of sufficient allegations in the plaintiff's declaration; and the case of *Shadock v. Plank-road Co.*, 79 Mich. 7, is relied upon in support of this objection. It may be that the declaration in this case is not sufficiently specific, upon the authority of that case, in its allegations as to the place and extent of the injuries received by the child, although it goes further than did the declaration in that case in its description of such injuries. It alleges in this respect as follows:

"She, the said plaintiff, was then and there greatly hurt, bruised, injured, and wounded, and became and was sick, sore, lame, and disordered, and permanently

crippled and deformed, * * * for a long space of time, to wit, hitherto and to this day; * * * and has become and is permanently disabled, crippled, and deformed."

The plaintiff was permitted to show under this allegation, coupled with the following as to damages:

"That from henceforth, during her whole life, she will be compelled to endure the suffering, anxiety, annoyance, and embarrassment arising from such disability, crippling, and deformity; that she will be deprived of social and other pleasures, which she might have otherwise enjoyed; and that she will not in the future, during her whole life, be able to transact and attend to her own affairs, and care for herself, as she otherwise could and would have done had not such injury occurred to her,"—

That the injury caused hip disease; that she was obliged to wear a Sayre hip splint; and that there were 15 holes discharging on her leg, from her body to the knee; of weak spells, nervousness, and poor eyes; and of trouble with her spine; and that she was permanently crippled and deformed.

I think that the objection to the declaration, in that it is not specific enough in its allegations of the details of plaintiff's injury, comes too late. It must be remembered that this case has been tried twice, and has been in this Court once before. The first declaration was not as specific as the present amended one. It averred that by means of said fall the plaintiff—

"Was then and there greatly hurt, bruised, and wounded, and became and was sick, sore, lame, and disordered, * * * and that for a long space of time * * * the said plaintiff hath suffered great pain of body and mind, and still continues to suffer great pain of body and mind," etc.;—

Yet on the first trial no objection was made to the declaration in this respect, nor was any question raised as to its sufficiency in this Court. By this record it

appears that the amended declaration was not demurred to, and nowhere in the case do I find this identical point made against the declaration. After verdict, a motion for new trial was made, and various reasons assigned therefor, but this is not one of them. The nearest approach to this subject is the thirteenth request, which is as follows:

"From all the evidence in this case, and the pleadings therein, the plaintiff has not made out such a case, as would entitle her to recover any damages."

But, as will be shown hereafter, this obviously had reference to another or to other propositions. It is evident that the attention of counsel was not called to the case of *Shadock v. Plank-road Co., supra,* until after the trial of this cause, which commenced on January 22, 1890. The opinion in the Shadock case was handed down December 28, 1889, and was not published in the Northwestern Reporter until its issue of February 8, 1890.

The objections to the introduction of proof as to damages were not any of them aimed at the insufficiency of the declaration in specifying the place, nature, and extent of the injuries, but for other reasons, as follows: The counsel objected to the mother's testifying to what plaintiff's condition was before the injury, and what care she took of her, the calling in of physicians, and the treatment the child received, on the ground that this care and calling in of physicians and treatment was not an element of damage under the declaration; to which plaintiff's counsel replied that they did not introduce it to show damage, but that proper care was exercised by the parents after the injury. She, the mother, was asked, and testified without objection, as to the present condition of the child, and testified as follows:

"*Q.* State what her condition is as to her being lame.
"*A.* She has weak spells right along. She is very

nervous. The discharges have affected her system, and her eyes are poor. She is not able to go to school. She is very nervous and not able to walk without a crutch. She could not reach a chair without help of her crutch, or some of us to help her. She has no use of her limb whatever. There is a large opening on the back of the spine. There is one large opening right on her back,— right on her spine. Of course she is very weak; unable to stoop. We called a doctor the next morning after the child was hurt."

Afterwards the defendant's counsel moved to strike out all the testimony in the case—

"Regarding the receiving of an injury, and what the injury was, on the ground that, under the pleadings in the case and the situation in the case, it is not *proper evidence* to go to the jury on the question of damages.

"*Court.* Why does it not necessarily follow, if there is liability, it becomes a question for the jury, under proper instructions, as to whether the injury and the pain, the suffering—

"*Judge Simpson* (interrupting). If they claim it in the declaration; but I take the position that it is not claimed or asked for in the declaration in this case. The only allegation for damages will be found after reciting the situation, how the child was hurt; we find that next to the last page,—the close of it. It goes on and recites that she was greatly bruised, injured, etc., and was permanently crippled and deformed, and so remained, and it goes on in that way, and states her condition, that she will be deprived of social pleasures, etc., and she avers that by reason of said injury she will necessarily be forced and obliged to pay, lay out, and expend a large sum of money, to wit; and it goes on to state—

"*Court.* There is no showing in regard to that.

"*Judge Simpson.* I understand that here is the only place that they have recited in any way, and they say that the said plaintiff has been and is, by means of the premises, otherwise greatly injured and damnified, to wit.

"*Court.* Why is not that allegation sufficient?

"*Judge Simpson.* Is there anything in this declaration which sets forth what they claim these damages for?

"*Court.* In a claim for damages there are necessary elements in an injury of this kind; of course, you cannot

recover for a doctor's bill, or a nurse's bill, if there is no showing, but in all cases of this kind there can be recovery for the injury, and one of the elements is pain and suffering.

"*Judge Simpson.* There is not a word about that.

"*Court.* It is not necessary.

"*Judge Simpson.* They do not say they claim anything for the pain; I have always supposed they had to aver in their declaration that they claim for something.

"*Court.* The rule is, as I understand it, where there are special damages claimed for some particular thing they must be averred, but for general damages, which naturally result from an injury, it can be stated in general terms without specifically alleging.

"*Judge Simpson.* I may be wrong, but I ask to have all evidence stricken out in regard to the injury received, and the situation of things as to the accident and the surroundings, as far as it relates to any right to recover damages, *for the reason that the plaintiff has not in this declaration set forth any claim for damages by reason of the injury.*"

Not one word is said about the injury not being sufficiently alleged, but the argument is that there is no claim of damages, by reason of the injury, set forth properly in the declaration.

Dr. Zina Pitcher testified to examining the child just before he gave his evidence, and gave her present condition, and his opinion that the injury was permanent. His testimony was objected to, not on the ground of any insufficiency in the declaration, as to its allegations of the injury, but for other reasons. Dr. David H. Weir also gave testimony as to the extent of the injury, and as to the cause of the plaintiff's present condition; and various questions asked him were objected to on the ground that they were improper, leading, suggestive, immaterial, and incompetent, but there was no hint anywhere that there was any trouble with the declaration as to its allegations of injury.

To show further what all these objections were aimed

at, we find the counsel for defendant, Judge Simpson, at the close of plaintiff's proofs, saying:

"We renew the request that we made heretofore during the trial, that all the testimony relating to the question of damages in regard to the child's falling and being hurt, and the testimony given in regard to pain, be stricken out, for the reason that there is no ground laid for it in the declaration."

I have given thus fully the language of the counsel for defendant, attacking the declaration in the court below, to show that such attack was made entirely against the allegations as to damages, and had not the remotest reference to its sufficiency in describing the injury. The case of *Shadock v. Plank-road Co.* has furnished an after-thought, but it may as well be said here that such practice is not fair to either the trial court or this Court. The trial court has had no opportunity of passing upon the point raised here. Had it been called to his attention, he might have required an amendment of the declaration. This Court also might, if sufficient care was not taken, be misled to believe that the issue was made in the court below when it was not. It cannot be said that the defendant was at all misled or in any wise prejudiced by the meagerness of this declaration, or its want of detail, as to injury to the plaintiff. The case had been once before fully tried, and the defendant was therefore well acquainted with the condition of the child, and what was claimed to be its injuries, and the natural results thereof; and we have spent more time than we ought in disposing of this mere technicality.

It is alleged as error that the mother of the child was permitted to testify that she examined the place of the accident the next morning after the injury to her child. We think this testimony was proper enough. The accident happened after dark, the night before, and the spot

could not well be examined until the next morning. But there was plenty of evidence showing the same condition she found it to be in for days and weeks before the accident.

The circuit judge properly charged the jury that the place where the injury was received was a part of the cross-walk. It is claimed that the walk was not built or ordered built by the village, and therefore no liability can be created against it for any defect in it, and counsel cite the case of *Williams v. City of Grand Rapids*, 59 Mich. 51. But this case differs from that in this: that a cross-walk was in existence and use here, while there was none in the Williams case. This cross-walk, by whomsoever built, was in the public street, and under the charge and care of the village authorities. The fact that the cross-walks were built and repaired under the village charter, by assessments levied upon the premises in the blocks adjacent to the same, does not relieve the defendant of its duty to keep such cross-walks in a safe condition for travel. The village was responsible for the unauthorized and unlawful encroachment of Solomon with his new sidewalk upon this cross-walk, which before that time had been even and level, after it had notice of such encroachment; and, if the cross-walk itself was broken and decayed, making a hole at the step or jog, and this step, together with the hole made by the broken cross-walk at the foot, caused this injury, as the jury found it did, the village was responsible for such injury. But the question was left to the jury by the court to determine whether or not the village had maintained a cross-walk from River street across Stockman street, and we are satisfied that they rightly found from the testimony that there had been such maintenance.

85 MICH—19.

The defendant requested the court to instruct the jury as follows:

"It is in the evidence in this case that the plaintiff on a former trial took the position that the injury complained of was occasioned by the step in the walk, and by reason of the plan of construction of the walk, and alleged no breakage or other defect in the walk; and you have a right to consider this fact, and the plaintiff's former theory of the case, in determining the question whether the walk as constructed was broken or defective;" which request was denied by the court.

The circuit judge, however, in his general charge, used this language:

"Something has been said to you as to what happened on the former trial of this case. As to what happened then, with that you have nothing to do. You are to try the case upon the pleadings as they now appear, and determine what the facts are from the evidence which has been admitted during this trial."

It is argued that this language referred to the claim made as above, by defendant's counsel, in the request quoted. It may be granted that the jury would naturally infer from the refusal of this request, and this language in the general charge, that they could not consider the change in the pleadings as bearing in any manner upon the evidence as to the condition of the cross-walk,— whether it was broken or not; and yet I think there was no error committed. The fact that the pleadings on the part of the plaintiff did not meet the evidence as shown on the first trial, and that the same were amended to remedy this difficulty on the second trial, was of no concern to the jury, and could have no possible bearing upon their determination of disputed facts in the case. If any of the witnesses on behalf of the plaintiff had changed their testimony for the purpose of developing or

sustaining a different theory in the case on the last trial, it would have been pertinent and proper to have shown it; but no such claim was made. It was not denied upon this trial that the jog or step was caused by the building of a new walk by Solomon, and the fact that such jog or step was no part of the original plan of the construction of the cross-walk was virtually admitted; yet no mention was made in the first declaration of this interference of Solomon with the cross-walk. This Court held under the pleadings that the existence of this step was a part of the plan of the cross-walk, with which courts could not interfere; yet the evidence in that record, as in this, showed that the defect was caused by Solomon's building his sidewalk over and above the cross-walk. *Shippy v. Village of Au Sable,* 65 Mich. 494, 496.

Likewise the first declaration contained no allegation that the cross-walk at the foot of this step or jog was broken up, decayed, and misplaced; yet it is shown conclusively by this record that there was evidence on the first trial tending to show that such was the fact, as alleged in the amended declaration. It was stipulated upon the last trial that the testimony of Dan B. McDonald, as printed in the record used in the Supreme Court when the case was here before, should be taken as the testimony of said McDonald as given by him on said first trial, and that the same might be used as testimony on the last trial, and it was so used. It will be seen thereby that he testified on the first trial that this cross-walk was in bad condition.

"The condition of the walk was broken up, and part of the plank was worn out and thrown away, which left a hole at the north end of the cross-walk between Stockman street and River street, which is represented by 'W' on the map."

And also that such broken condition extended to the

south end of that portion marked "X" upon the same
map. In this map, W represented the defective walk of
the old cross-walk and the place where the child fell,
and X represented that portion of the new walk of Solo-
mon overlapping the old cross-walk. Dan B. McDonald
was marshal of the village of Au Sable at the time this
accident happened, and he further testified that the
cross-walk, at and near this point,—

"Consisted of old broken plank, and some of the old
broken plank had been torn out, which left a hole from
eight to ten inches deep; that is, from the top of the
new walk where you stepped off. There was a plank
between five and six feet long, twelve inches wide, and
two inches thick, put on top of the new walk,    *    *
*    down southerly to the cross-walk, for people to walk
on."

He testified that this plank was put there to save the
step of eight to ten inches from the new walk down to
the cross-walk. It will also be noticed from the testimony
thus introduced from the first record that on the first
trial this testimony was objected to, on the ground that
there was no allegation of this defect in the pleadings,
and therefore it was immaterial, incompetent, and irrele-
vant. It therefore appears that there was no change in
testimony to make a new or different case on the last
trial from that on the first trial, but the pleadings were
amended to meet the case as developed and made by the
plaintiff's testimony on such first trial. It was entirely
proper so to amend the declaration in the furtherance of
justice, and with such amendment the jury had nothing
to do or to consider. The charge of the court in this
respect, and his refusal to give defendant's request, was
correct.

Another objection to the verdict and judgment to be
considered is the claim of contributory negligence on the
part of the plaintiff's parents. It must be admitted to

be the law, as charged by the court, that the plaintiff herself, a child less than four years of age, could not be guilty of such negligence. Authorities are cited to establish the doctrine that the negligence of the parents can be imputed to the child in such a case as this, even when the suit is in behalf of the child and not of the parent. I have expressed my views as fully as I desire to in respect to this matter in *Battishill v. Humphreys,* 64 Mich. 503–511. I am also satisfied that the greater weight of authority in this country is now opposed to the contention of the defendant. See *Westbrook v. Railroad Co.,* 66 Miss. 560 (6 South. Rep. 321), 14 Amer. St. Rep. 587, and note to the case by the editors of the American State Reports.

The thirty-sixth assignment of error relates to the submission of special questions to the jury. The defendant presented two special questions, as follows:

1. At the foot of the step in question in this case was the cross-walk broken up?
2. Was the injury occasioned in this case by reason of the fall from the step?

The first question was submitted, and the jury answered the same in the affirmative. The court refused to submit the second question, saying that it might be answered either way and not be inconsistent with the general verdict of the jury. Upon the first argument of the case this assignment of error was not argued, and under the rules would ordinarily be considered as thereby abandoned. The majority of the Court, however, desired argument upon this assignment, and a reargument was ordered. I am of the opinion that this assignment, not being at all referred to in the briefs or oral argument of defendant's counsel at the first hearing, was deliberately abandoned under the rules, and therefore ought not to be considered

in this Court.[1] But if it be considered, I am also firmly convinced that the circuit judge was right in refusing to submit it. It is not contended that the plaintiff's injuries were occasioned from any other cause than the fall that she had upon this cross-walk, nor is it disputed that she fell off the step. The injuries resulted from the fall from the step,—that was the primary cause; but the defendant claims that, if the sidewalk at the foot of the step had not been decayed and broken up, but in a sound condition, the plaintiff could not have recovered, under the opinion of Chief Justice CAMPBELL (65 Mich. at page 498), because the village authorities in their discretion had a perfect right to determine how the cross-walks should be laid and access obtained therefrom to the sidewalk. Defendant's counsel contend that the plain meaning of the question is this:

"Did the fall from the step, and not the decayed, misplaced, or broken cross-walk, cause the plaintiff's injuries?"

If this is the meaning of the question, then it was not fairly put. Under the evidence in the case, the jury truthfully could have answered the question only in the affirmative. Who would think of answering this question by saying:

"No; the fall did not hurt her, but she was injured by striking the ground."

The question, fairly put, should have been: "Would she have received these injuries if the sidewalk had been in a proper condition?" or words to that import. Then, if the jury had answered "Yes," there would have been the opportunity given for the argument that she could not recover under the opinion of Chief Justice CAMBBELL.

---

[1] See *Black v. Dawson*, 82 Mich. 485.

Further, in my opinion, as the case now stands, the question was entirely immaterial. Whatever the rule may be as to the discretion of village or city authorities in making steps or falls from the sidewalk to the cross-walk, one thing is certain, to wit, when the authorities have seen fit, in the first place, in their plan of improvements, to make the sidewalk and cross-walk meet on a level, and it has been so used by the public, a private citizen, as in this case, has no business or right to interfere with such plan, and, in remodeling his sidewalk, cause a step or fall to the cross-walk where one did not exist before. Such a step is an obstruction, and it is the duty of the village or city authorities to remove it; and if they fail to do so after notice, the village or city becomes responsible for the obstruction, and for all damages resulting therefrom.

The jury found also, in answer to the special question submitted, that the cross-walk was broken up. In such a case, how could a jury find that the condition of this cross-walk at the foot of this step did not contribute at all to the injuries of the plaintiff, and that she would have been hurt the same if it had not been broken up; and, if this broken condition of the cross-walk contributed at all to the injury, she was entitled to recover.. *Town v. Railroad Co.*, 84 Mich. 214.

The judgment is affirmed, with costs.

The other Justices concurred.