## Mary Healy v. City of Chicago.

### Gen. No. 12,854.

1. SIDEWALK—*extent of liability of municipal corporation for negligent plan of construction.* The jury is entitled to pass upon a personal injury case in which it is alleged that the injuries resulted from the negligent plan of construction adopted with respect to a sidewalk, only where the court can say as a matter of law that such plan of construction was negligent.

ADAMS, J., dissenting.                            .

Action in case for personal injuries. Error to the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed January 21, 1907.

**Statement by the Court.** Plaintiff in error sued defendant in error in case, for injuries to her person alleged to have been occasioned by a defective side-walk. It is unnecessary for the decision of questions arising in the case to set out the pleadings. Counsel for the plaintiff made the following opening statement to the jury:

"As I said yesterday, this is a case brought by Mrs. Mary Healy, the lady sitting here, against the city of Chicago, for injuries which occurred on December 14, 1899. This accident happened on LaSalle street, between Thirty-ninth and Fortieth streets, on the South Side. The accident happened at No. 3916 La-Salle street. Mrs. Healy lived on the same street at 3930. The accident happened about eight—between eight and nine o'clock, in the evening of the 14th day of December. On the evening in question Mrs. Healy and her son had gone over to State street to do some shopping, State street being east of LaSalle street. In returning home that evening she came to the south side of Thirty-ninth street a ways, until she reached the corner, the southeast corner of Thirty-ninth and LaSalle streets, which are public streets in the city of Chicago; then leaving that corner, she came across the street diagonally and reached a point in front of 3914 LaSalle street, going south. In front of 3914 LaSalle street, which is on the west side of the street, the sidewalk was raised thirteen inches higher than the sidewalk in front of 3916 LaSalle street, making a sudden step-off or perpendicular drop of thirteen inches. There were no lights on the street, and in the middle of the street south from where plaintiff went onto the sidewalk it was very rough to walk upon. At the perpendicular step-off between Nos. 3914 and 3916, there was no railing or sloping boards, sign, light or warning, but it was a clear perpendicular step-off of thirteen inches. The sidewalk on each side of this step-off was a plank walk about six feet wide, and the planks in the said sidewalk were sound and solid and firmly fastened in place, and said sidewalk had been in the condition it was on the evening in question for over a

year.   This evening it was very dark, so that it was
almost impossible to see the ground.   There were no
street lamps there, and Mrs. Healy, in coming across
the street—LaSalle street—to the sidewalk on the west
side of the street, in front of 3914, supposed she was
immediately south of this.jump-down or step-down, but
instead of that she got upon the sidewalk in front of
3914 just before the step-off, and the first step or two
she made after getting upon the sidewalk and going
south, she unexpectedly stepped down onto the lower
sidewalk and fell.   Now, Mrs. Healy was quite a heavy
woman at that time, and in her fall she so twisted her-
self that she injured her spine and left side; also her
ankle.   She fell flat on the sidewalk there in front
of 3916.   Her boy, who was with her, and a gentle-
man who came along there, helped her up and helped
her home.   She went to bed; she was in bed perhaps
for about two months; the doctor was called and
treated her, and she has been ailing ever since.   Now
she weighs perhaps half as much as she did then.
Sometime previous to this accident, fourteen or fif-
teen months, she had an operation performed in the
hospital for hemorrhages, and when she fell this time
those hemorrhages recommenced again, so they com-
menced immediately while she was lying on the side-
walk.   These hemorrhages continued during the time
she was in bed at home, and they continued for
about two months.   She had a child born in August,
and this happened in December, and the child was
born the following August, and when the child was
born these hemorrhages recurred.   She was taken to a
hospital and operated on two or three times.   The ef-
fect of her injury is that since that accident she has
never passed a quiet night; she has never been able to
sleep soundly one solitary night.   Before this acci-
dent she was able to do her housework, take care of
her family of seven or eight children and her hus-
band.   Since this accident she has never been able to
do that.   She left the hospital fourteen months prior
to this accident.   During that period of fourteen
months she was well, strong and healthy.   She did
her housework.   Since the accident she has never been
able to do her housework and has been suffering con-

tinually with the pain in her spine and side; she had trouble with her right ankle. She is extremely nervous, is unable to sleep, had loss of appetite and pain and suffering besides.''

At the conclusion of the foregoing statement it was agreed that the street in which it was averred in the declaration the accident occurred was a public street; that the condition in which the street was at the time of the accident had been its condition for at least a year and a half, and that it was dark at the time of the accident; that at the place where the accident occurred the end of one part of the sidewalk was thirteen inches higher than the part of the walk next to and adjoining it; and it was agreed between counsel for the parties, respectively, that the plaintiff's opening statement, with said agreed facts, should constitute an agreed statement for the purpose of appeal. Whereupon, the defendant moved the court to instruct the jury to find the defendant not guilty, which motion the court granted, and gave to the jury this instruction: "The court instructs the jury to find the defendant not guilty," which the jury did, and the court, after overruling the plaintiff's motion for a new trial and in arrest of judgment, gave judgment against the plaintiff for costs.

E. C. WESTWOOD, for plaintiff in error; W. T. UNDERWOOD, of counsel.

JOHN F. SMULSKI, City Attorney, for defendant in error; EDWARD C. FITCH, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

In this case the city was not liable unless upon the ground that the "plan" or "design" for the walk at the place in question, i. e., with the "step-down" between the two lots, was dangerous.

The proposition that negligence can be predicated of the "plan" or "design" of any municipal work,

in that it does not give the public more complete pro-
tection, has been repudiated by many courts for vari-
ous reasons; among them much importance has been
given to the argument *ab inconvenienti.*

Cases which hold thus strongly are Case et al. v.
The Northern Liberties, 35 Pa. St. 324; Lansing v. Too-
lan, 37 Mich. 152; Davis v. The Mayor, etc., 61 Mich.
530; Shippy v. The Village of Au Sable, 65 Mich. 494;
Urquhart v. The City of Ogdensburg, 91 N. Y. 67;
Monk v. Town of New Utrecht, 104 New York, 552;
Roach v. City of Ogdensburg, 87 N. Y. Sup. Ct. Rep.
467.

It may be claimed that construction of sidewalks
on different grades with a "step-down" from one to
the other, cannot be called a "plan" or "design"
"adopted" by the municipality, as distinguished from
"defects in construction" or "repair;" but this ques-
tion was raised, and as we think, decided correctly,
in Urquhart v. Ogdensburg, *supra.* In that case the
common council of Ogdensburg had not taken any ac-
tion in relation to the sidewalk, the slope of which
from the house to the curb was alleged to be the negli-
gent construction which had caused the accident. The
court below charged the jury "that if the corpora-
tion had adopted a plan in terms, that is, if the com-
mon council, the body having charge of sidewalks,
had taken into consideration in advance the subject
of what would have been a proper walk to construct
in this place, and had determined that, the city would
not have been liable for constructing a walk of the
kind. But the common council did not take into con-
sideration in advance this subject. It took no ac-
tion upon it." The Court of Appeals declared that
instead of this charge, the trial judge should have
charged that "the defendant could not be held liable
for any fault in the plan of the work, and *hence* was
not liable for the steepness of the slope or incline
from the platform to the curb stone." It held that the
rule that a municipality was not liable for the bad

plan or design of a sidewalk applied to cases where the approval of the work when completed was to be inferred from an omission to disapprove it after it was built, as well as to a design proposed and accepted before the work was built.

Some courts have accepted the rule that a city is liable only for faults or defects in construction and maintenance, and not for bad and dangerous plans or designs and methods in municipal work, only with modification. They say that where such a work as a street or sidewalk as planned, ordered or accepted by the governing authority of the city is so manifestly dangerous and unsafe that the court can say, as a matter of law that it is so, the city should be held liable, but not otherwise. It should not be left to a jury to say whether the city was negligent in such plans or methods thus ordered or accepted. Among cases which hold the rule thus modified may be cited: Gould v. City of Topeka, 32 Kan. 485, and Teager v. City of Flemingsburg, 109 Ky. 746.

But whether the rule in its strictness as enunciated by the Court of Appeals of New York in Urquhart v. The City of Ogdensburg, or as modified by the Supreme Court of Kansas in Gould v. The City of Topeka, is adopted by us, the case at bar seems to us to be governed by it. For reasons various and undoubtedly reaching back far into the history of Chicago, the sidewalks of Chicago are not all on the same level, even on the same street or on the same side of the street. The city has allowed these sidewalks, with slight differences of level between respective lots, to remain, and has accepted as sufficient, well constructed sidewalks adjoining each other but not on a level.

In the case at bar the two pieces of sidewalk involved are admitted to have been made of planks, sound, solid and firmly fastened in place, but there was a difference of thirteen inches in the grade—a clear perpendicular step-off without sloping boards or a step.

This had been the condition for over a year and a half.   There is no claim that any other accident had occurred there.   The Supreme Court used language in the case of City of Chicago v. Bixby, 84 Ill. 82, which seems to us applicable here:

"After such an accident it is natural for persons to conclude it was not safe.   But it is the fact of the injury having occurred that suggests the idea of the want of proper construction.   It is more than probable that immediately before this occurrence, the same witnesses would have said this step was safe, and would have referred to the great length of time it had been used and the large number of persons who had passed over it without accident, as strong evidence of the fact."

In the Bixby case a step had been placed between the two levels; those two levels being about the same distance apart as in the case at bar.

The court, speaking in the Bixby case of the step as compared with an inclined plane, argued that an inclined plane would have been more dangerous than the step.

In the case at bar there was neither step nor inclined plane, but for a step down of thirteen inches— certainly not more than frequently occurs from curb to street level, or from sidewalk to cross-walk—the city or the builder of the sidewalk might have concluded that the absence of an intermediate step would be safer than its presence.   There might be less danger of stumbling or slipping.   The distance is not so great as two treads of an ordinary staircase.   We do not think the court below could have properly said, as a matter of law, that the method or plan of construction was dangerous, and we think it properly took the cause from the jury.

We are aware that our opinion in this case is inconsistent with that of this court in Pfeifer v. Town of Lake, 37 Ill. App. 367, where in a similar case the court held that the case should have been left to the

jury so that they might have determined from all the evidence whether the sidewalk was defectively constructed by reason of the step-down. But after a careful consideration of the opinion of the court as voiced by Judge Moran, and of the dissenting opinion of Judge Waterman, we are constrained to agree with the reasoning and conclusions of the latter. We think, also, that it more correctly states the deductions to be made from the decisions of the Supreme Court. The opinion of the court cites City of Chicago v. Gallagher, 44 Ill. 295, and City of Chicago v. Langlass, 66 Ill. 366, as authority for its position that the question whether the sidewalk was so defective as to render the city liable because not on a level, should have been sent to a jury. We agree with the minority opinion that these cases do not go thus far, but are authority only for the modified rule about accepted methods of construction of sidewalks above stated; that is, that the jury may decide on the liability of the city for an accident alleged to have resulted from them, when as a matter of law the court can say the accepted method of construction was dangerous.

Moreover, we think that the Supreme Court in the City of Chicago v. Bixby, 84 Ill. 82, decided that the city was not liable for negligence because of a step-down of a foot between the levels of two sidewalks. It is true that in that case there was a step between, but the discussion concerning the safety of the step appears to us to reveal that the court did not think the change in level itself a dangerous construction for which the city could be held. We do not think it was in the case at bar. Undoubtedly it would be better if no such changes in grade or level between adjoining sidewalks existed within the very large area of Chicago. To this ideal condition we may hope the city is tending, but in view of the probable consequences attaching to holding the doctrine declared by the court in Pfeifer v. The Town of Lake, and be-

cause we hold that doctrine an extension of the liability hitherto placed upon municipalities for sidewalk accidents, we must decline to follow it. Our conclusions are rather expressed by slightly paraphrasing some statements of the dissenting opinion in that case: "The complaint is not that the work in building the walk was improperly or negligently done, but that its design was improper and injudicious. * * *. This is a matter over which the courts have no control. They cannot compel the city to build any walk at all; because it has the power to grade and improve streets, it is not under obligation to do so. And having a discretion as to whether it will improve at all, it has also a discretion as to the kind of improvement, if any, it will make. * * * Its judgment as to what is the best kind of improvement is not subject to review by any court or jury in cases where the court cannot say, as a matter of law, that the plan itself is so dangerous that its construction was negligence."

We do not agree with counsel for appellee as to the question of contributory negligence. That was a question for a jury, had the court not properly taken the case away from it on the primary and more fundamental point.

The judgment of the Circuit Court is affirmed.

*Affirmed.*

Mr. JUSTICE ADAMS, dissenting:

I do not concur in the foregoing opinion, which is based mainly on the judicial opinions of other states. Such opinions can only be regarded as authorities here in so far only as we conceive them to be in conformity with sound reason. The legislative assembly, in vesting appellant with authority to construct sidewalks, cannot, as I think, have intended or contemplated that appellant might, in the exercise of the power, plan and construct an unsafe sidewalk, or one not reasonably safe. Sidewalks are constructed for

the convenience of pedestrians, and an unsafe sidewalk, instead of being a convenience is a danger. The law in this state has always been that a municipal corporation must exercise ordinary care to keep and maintain its sidewalks in a reasonably safe condition, and such being the law, it seems to me absurd that a municipal corporation may so plan and construct a sidewalk that, owing to its construction, it cannot be maintained in a reasonably safe condition; that if a person be injured by reason of a defective and unsafe sidewalk, and sues the municipality, it will be a sufficient answer to the suit to prove that it was so planned and constructed by the municipality. Such is not the law of this state.

City of Chicago v. Bixby, 84 Ill. 82, cited in the foregoing opinion, is not authority for the proposition that, if the defect complained of by a plaintiff was owing to the plan and original construction of the walk, there can be no recovery. In that case, as in this, the defect was in the construction. On the contrary, it is authority for the proposition that a municipality, in constructing a sidewalk, must exercise reasonable care to make it reasonably safe, and the cause was reversed and remanded because the evidence showed it to be reasonably safe, the court saying: "We think the evidence shows that the sidewalk was reasonably safe, and, if so, the city should not be held liable." The court also uses the following expressions: "The city was bound only to the exercise of reasonable care in making this step." *Ib.* 85. "It might be improperly constructed, and yet be entirely safe for persons passing over it, using reasonable care. The instruction was too broad. It should have required of the city only reasonable care and skill in constructing the step." *Ib.* 87.

In City of Chicago v. McGiven, 78 Ill. 347, the main question was as to the construction of the walk. A heavy piece of plate glass about twenty-two by twenty-four inches was inserted in the walk, and the question

was whether such insertion in the walk was safe construction.  Witnesses for the plaintiff were erroneously permitted to give their opinions as to whether the glass part of the walk was safe, in respect to which the court say: "The question whether the glass was unsafe, by reason of the too great smoothness or slipperiness of its surface, was not a question of science or skill.  The decision of that question required no special knowledge, and it was easily determinable by the jury, upon a sufficient description of facts pertaining to the glass, and the use of it in a sidewalk, being given by the witnesses."  Thus the court held it a question for the jury on proper evidence, whether the construction was reasonably safe, and the court reversed and remanded the cause for another trial.

In Village of Mansfield v. Moore, 124 Ill. 133, the sidewalk was built by the village, and the trial court instructed the jury that the "village would be liable to the plaintiff for negligence in the construction or maintenance of said walk, if, by reason of such negligence, the plaintiff was injured while exercising ordinary care, in passing over such walk."  Also, the trial court instructed the jury that "the law requires cities and villages to construct such sidewalks as they build in such manner as to be reasonably safe in their use, and also to keep and maintain the same in a reasonably safe condition."  By another instruction the jury were directed to determine whether the sidewalk, at the point where the injury occurred, was or was not constructed so as to be reasonably safe.  The court refers to these instructions with approval.  See also, City of McComb v. Smithers, 6 Brad. 470, 473; City of Chicago v. Richardson, 75 Ill. App. 198, and Pfeifer v. Town of Lake, 37 *Ib.* 367.

The last case is similar to the present, and the trial court, as in this case, took the case from the jury, and this court reversed the judgment and remanded the cause for retrial.  It was a question for the jury, in

194    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Ass'n v. Breitung.

this case, whether the sidewalk was reasonably safe, and the judgment of the trial court should be reversed and the cause remanded.