(65 App. Div. 394.)

### BERGER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   November 22, 1901.)

MUNICIPAL CORPORATIONS—INJURIES ON SIDEWALK—SNOW AND ICE—EVIDENCE
     —SUFFICIENCY.
          Plaintiff was injured by a fall on an icy sidewalk.   Witnesses for
     plaintiff stated that there had been ice on the walk for a week prior to
     the accident, but no explanation was given as to how ice could have
     formed for such length of time.   A few days before the accident, snow
     had fallen, though up to the time of the accident it did not appear that

the temperature had remained above freezing a sufficient time for it to melt and form ice. Evidence was given that the ice was formed from the contents of a barrel which a street cleaner upset, but it was not shown that the weather was such that the ice could have been removed by the city by the exercise of due care. *Held* insufficient to sustain a verdict against the city for the plaintiff's injuries.

Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by Adolph Berger against the mayor, aldermen, and commonalty of the city of New York. From a judgment in favor of plaintiff, and an order denying defendant's motion for a new trial on the minutes, it appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ.

Chase Mellen, for appellant.

Roger Foster, for respondent.

LAUGHLIN, J.  This is an action for personal injuries sustained by plaintiff in falling upon a sidewalk on one of the public streets of the city of New York, which it is alleged was in a dangerous and unsafe condition, owing to ice and snow negligently allowed to accumulate and remain thereon by defendant. The accident occurred between the hours of 11 and 12 o'clock in the forenoon on the 20th day of December, 1896. The day was cold, but the sun was shining. The accident occurred in the vicinity of the southeast corner of Stanton and Pitt streets, but there is a sharp conflict in the evidence as to whether it occurred on the southerly walk of Stanton street, or on the easterly walk of Pitt street. The lot at this corner is occupied by a building referred to in the testimony as a grocery store, which extends out to the lines of the street, but at the time in question the store part of the building was unoccupied. The walks were level, constructed of stone, and no defect therein was charged or shown. On the day in question, plaintiff, who resided at No. 84 Sheriff, which is about a block and a half easterly and southerly of this corner, had been to the synagogue on Norfolk street, westerly of this corner, and north of Stanton street. He was 59 years of age, in good health, and apparently his eyesight was in normal condition for a man of that age. The road traveled by him in going to the synagogue is not shown. The grounds upon which we are asked to grant a new trial are (1) that plaintiff was guilty of contributory negligence, and the complaint should have been dismissed; and (2) that the verdict is against the weight of evidence.

The material evidence relating to the point of the accident, the condition of the walk, the care exercised by plaintiff, and the weather, is, in substance, as follows: The plaintiff testified that the weather had been cold for two weeks, and that there had been rain, and that he fell at the corner; that he had in his hands a prayer book and a "talaith," and was walking right in the middle of the walk, and did not see any ice until after he slipped and fell; that he then saw ice under the snow; that the whole corner was full of ice and snow about three or four inches thick, but he could not say exactly whether it was

smooth or rough or lumpy; that if he had seen the ice he would have gone around it; that he fell about the second step he took on the ice and snow, and sustained a fracture of the thigh bone near the hip joint; that it last snowed the day before, and the walk was clear everywhere except at that place; that there was only new snow on the walk and ice, but that in the street there was both old and new snow. An observer from the United States weather bureau, called by plaintiff, testifies that the records show that there was no snow until Monday, the 15th of December, when there was only a trace, which fell for four minutes, but that at 9:32 p. m. sleet commenced falling, which turned into snow at 11:18 p. m., and snow continued to fall until 3:15 p. m. on Tuesday, the 16th, during which time 7.8 inches of snow fell; that there was no further snow until after the 20th; that the temperature was below freezing all day the 16th, and on the 17th the highest temperature was 36°, and the lowest 22°; on the 18th, the highest 44°, and the lowest 28°; on the 19th, the highest 34°, and the lowest 23°; and the 20th, the highest 32°, and the lowest 24°; that the records did not show at which the temperature reached the maximum or minimum. He also testified that there could not be any ice before the 15th, because there was not any snow. A witness named Connor, whose business was peddling with a push cart on Stanton street, called by plaintiff, testified that he did not see the accident; that he was over these walks daily; that there were pieces of ice frozen on the walk at the corner in question; and, in answer to an inquiry as to how the ice came there, he said it was raining, and the frost came, and a street cleaner on the Monday morning before the accident upset a barrel of German pickles, which he said were usually put up in brine or vinegar, on the sidewalk on Pitt street, opposite a door into the store; that the pickles were picked up, but that the water froze, and that thereafter and on that and the following day he saw three or four people fall there, and that he saw a policeman who was standing on the corner pick up a man who fell there on Tuesday; that he saw no one fall there on Wednesday, Thursday, or Friday; that the ice remained there two weeks (but it is evident that he did not mean that the ice had been there two weeks at the time of the accident); and that it snowed five or six days before the people fell. The plaintiff's son testified that he arrived on the scene just as they were removing his father to the ambulance, and that this was in front of No. 108 Pitt street, opposite the door of a brick tenement house (but it may be that he has reference to the Pitt street door of the grocery building, which, however, is given by another number, as No. 106); that his father was there in a chair in the middle of the walk, near the corner; that there was smooth ice at that place, covered by snow; that "the ice was about two square yards, but it was not all over; it was about a foot high (the ice), but it was not all over it,—just only from the corner; and the center was about a foot high. The ice on the sidewalk, * * * it was slanting. * * * It slanted towards the house"; and that from the highest point it also slanted towards the curb. This witness, after testifying that the ice was on Pitt street a few steps from the corner of Stanton street, "about two feet, it might be three," from the

corner, said that the ice was on Stanton street, and further added: "I am positive I had seen it there for a week and a half before. It might have been a week." Mr. Greenburg, a corn merchant, called as a witness for plaintiff, testified:

"It was in Stanton street. A piece of ice was on the sidewalk. It only covered where he fell. On the rest of the walk was snow. That the ice was perhaps one foot thick. Q. Was the ice level there, or was there a slant? A. A slant,—pieces. * * * I had seen the ice and snow there in the same condition it was in when the plaintiff fell. About two weeks it was there. I remember it had snowed from the heavens four days before."

He further testified that "there was snow and ice all over this walk in front of this place," and that plaintiff fell on the sidewalk on Stanton street. Another witness (a paper hanger named Mufson) called by plaintiff testified that prior to the 18th of December, and about the 15th or 16th, he saw a girl who was walking on the sidewalk at the corner of Stanton and Pitt streets with a pitcher in her hand fall down and break the pitcher, and that a policeman helped her up; that there was ice on the walk, and it had been there for two weeks; and, in answer to a question calling for a description of the walk on December 19th and 20th, he said: "Well, the sidewalk, was ice on the sidewalk. It was in chunks,—pieces of ice there. On the sidewalk was snow." He further testified that at the point where he saw the girl fall the ice was in the middle of the walk, and about a foot thick; that the snow had been there for a few days, and the ice about two weeks. He was then asked:

"Was the ice and snow all the same thickness the whole width of the sidewalk, or was it higher at one point than another? If so, where?"

—To which he answered: "All over there was only snow on the sidewalk, and that place there was ice. I could not say that place was higher or lower than the rest of the sidewalk, but there was snow on the sidewalk all over; and, so long as there is snow all over the sidewalk, you can't tell." The record also shows further testimony of this witness, after which there was no cross-examination, as follows:

"By the Court: I say this ice was about a foot thick. I do not say the surface of the sidewalk was level. It was not all even. Q. You have just told us the sidewalk was the same all over,—you couldn't see any difference in the height of the ice in any other part of the sidewalk. Didn't you say that? A. There was snow on the sidewalk, but in that place there was ice. This ice, I say, was about a foot thick, and the sidewalk was level all over. Q. Then the snow was a foot thick which lay in the other part of the sidewalk, to make it level? A. I don't know. I didn't measure that. Q. You say it was all the same thickness all the way over. Is that right? A. I can't tell if it is right or not."

The defendant called as witnesses four police officers, two of whom had the beat embracing this sidewalk at the time in question, and all of whom gave evidence tending to show that there was no snow or ice upon the walk; that it was merely damp or wet from people walking on it after passing through the slush at the crossing, but that it was not frozen, and that no snow or ice had been permitted to accumulate there; and the evidence of some of them tended to show that the accident occurred on Stanton street, about 15 feet from the crosswalk, and that there was considerable snow in the street at the

time. The janitor of the grocery building testified that he promptly cleaned the walk when the snowstorm ceased, and that there was no ice on the walk, and only a little snow carried there by pedestrians. The gentleman in charge of the meteorological observatory at Central Park was called as a witness for the city, and supplied some evidence relating to the matter concerning which the government observer was not interrogated. This witness said that the only rain in the month of December, prior to the accident, was on December 9th, when .26 of an inch of rain fell, and on December 11th, when only .03 of an inch fell.

At the close of the plaintiff's case, and at the close of all the evidence, defendant's counsel moved for a dismissal of the complaint upon the ground that plaintiff had not proved freedom from contributory negligence, and that he had not established a cause of action; and to the ruling of the court in denying these motions an exception was taken. The learned trial judge submitted the case to the jury in a clear and fair charge, to which no exception was taken. A careful consideration of all the evidence, which we have briefly summarized, leads to the conclusion that the verdict was clearly against the weight of evidence. The records of the weather bureau, supported and sustained by the probabilities of the case and the preponderance of the evidence, indicate that the walk had not been left in a dangerous or unsafe condition for public travel. The preponderance of the evidence impeaches the testimony of some of the plaintiff's witnesses, who, after this long lapse of time, undertook to state that there had been ice upon the walk for upwards of a week prior to the accident. No explanation is found in the evidence as to how ice could have formed on the walk for such a length of time prior to the 20th day of December, 1896, and the verdict cannot, therefore, be permitted to stand.

But, beyond this, we are also of the opinion that the exceptions to the refusal of the court to nonsuit and to direct a verdict for the defendant, which appellant's counsel states in his points that he relies upon, but does not argue, were well taken. If there was ice upon the walk as the result of the sleet which immediately preceded the snowstorm of Monday and Tuesday, there was no evidence that the same had been softened by a thaw for a sufficient length of time prior to the accident to charge the city with negligence in not causing its removal. Since the thermometer did not go above the freezing point on Tuesday, it is manifest that no ice could have formed from the melting of snow on that day. At some time on Wednesday the thermometer went 2° above the freezing point, but how long it remained there, and whether a sufficient length of time to cause a thaw, does not appear; nor is there any evidence of a thaw on that day. On the 18th the thermometer went 12° above the freezing point at some time, but there is no evidence as to whether it was in the morning or afternoon or evening; nor is there any other evidence of a thaw on that day. The thermometer went only 2° above the freezing point on the 19th, and there is no other evidence of a thaw on that day. It is manifest, therefore, that, if any ice was formed as the result of this storm or the melting of the snow, the city could not rea-

sonably be charged with negligence in not causing its removal before 11 o'clock on the morning of the 20th. The duty of a municipal corporation to remove accumulations of snow and ice from its walks is not absolute. It is a qualified duty, and becomes imperative only when the accumulations of ice or snow render the walk dangerous to pedestrians. This city, like most of our municipalities, has delegated that duty in the first instance to the adjacent property owners, and it is only called upon to act when it has actual or constructive notice that dangerous accumulations of snow or ice exist, and a reasonable time has elapsed after such notice to enable it, in the exercise of ordinary care, to remove the obstruction. Taylor v. City of Yonkers, 105 N. Y. 210, 11 N. E. 642; Harrington v. City of Buffalo, 121 N. Y. 147, 24 N. E. 186. If this was a patch of ice caused by the upsetting of the barrel of pickles, as indicated by some of the evidence, it was not so manifestly dangerous to public travel as to give the city constructive notice, and impose upon it the duty of causing its removal prior to the accident. It is claimed that the city had actual notice through its police officers; but, if so, the evidence does not show that the condition of the weather was such that the ice could and should have been removed, by the exercise of reasonable care. An attempt was made, without success, to show that there were footprints in the ice, which would indicate a thaw. It is claimed that the city is liable for the negligence of the street cleaner in upsetting the barrel of pickles, but the evidence is altogether too meager as to the facts and circumstances under which it was upset to warrant a finding of negligence in that regard; and it may well be doubted as to whether the formation of ice a foot or many inches in thickness, and dangerous to public travel, would be the natural or necessary consequence of the tipping over of a barrel of brine or vinegar or other water upon a sidewalk, so as to render the city liable, even if it were conceded that it would be otherwise liable for such acts of the street cleaner. If there had been a small patch of ice upon the walk for two weeks, as testified to by some of the witnesses, there being nothing in the evidence to explain what caused its formation, and with only this slight evidence as to the nature or extent thereof, we think the city would not be liable, for the same reasons upon which we deem the city not liable for the ice if formed from the water in the pickle barrel.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except PATTERSON, J., who dissents.

INGRAHAM, J. I concur in the reversal of this judgment, upon the ground that the evidence does not justify a finding that the defendant was negligent. The obligation of a municipal corporation to remove snow and ice from the sidewalks is one that has been much discussed, but I think it is now settled that the existence of ice or snow upon the sidewalks in cities in this locality is not of itself evidence of negligence. It is only necessary to call attention to two or three late cases in the court of appeals. Thus, Judge Finch, in Taylor v. City of Yonkers, 105 N. Y. 206, 11 N. E. 643, says:

"When the streets have been wholly or partially cleaned, it often happens that a fall of rain or the melting of adjoining snow is suddenly followed by

severe cold, which covers everything with a film or layer of ice, and makes the walks slippery and dangerous. This frozen surface it is practically impossible to remove until a thaw comes which remedies the evil. The municipality is not negligent for awaiting that result. It may and should require householders, when the danger is great, to sprinkle upon the surface ashes or sand, or the like, as a measure of prudence and caution, but it is not responsible for their omission. It is no more bound to put upon the ice, which it cannot reasonably remove, such foreign material, than to cover it with boards. The emergency is one which is common to every street in the village or city, and which the corporation is powerless to combat. Usually it lasts but a few days, and the corporate authorities may await without negligence a change of temperature which will remove the danger."

In Kaveny v. City of Troy, 108 N. Y. 574, 15 N. E. 726, Judge Finch says:

"Something more than the presence of ice, due to the results of a low winter temperature, must be shown, to make the city chargeable with negligence. The fact that for more than ten days preceding the accident to plaintiff the mercury had been below the freezing point was established without contradiction, and that the city did not accomplish impossibilities or display unreasonable and extraordinary diligence furnishes no ground of liability."

In Kinney v. City of Troy, 108 N. Y. 570, 15 N. E. 728, Judge Danforth says:

"A city is not bound to keep its sidewalks absolutely free from ice. * * * The situation was one common to all cities in a northern climate, and to all sidewalks in such cities: A sidewalk difficult, it may be, of passage; but, if so, from the ordinary action of the elements only, and from a formation of ice which no body of men are competent to prevent, nor under any ordinary circumstances to remove. Something more than a slippery sidewalk must be shown, to enable one suffering from it to cast the burden of compensation upon the city."

These cases are quoted with approval in Harrington v. City of Buffalo, 121 N. Y. 147, 24 N. E. 186, where it is said:

"The duty resting upon municipal corporations to remove accumulations of ice and snow as it falls from time to time upon their streets is a qualified one, and becomes imperative only when dangerous formations or obstacles have been created, and notice of their existence has been received by the corporation."

And in Lichtenstein v. City of New York, 159 N. Y. 500, 54 N. E. 67, the same principle was discussed and applied.

The situation shown to have existed in this case brings it, I think, within the principles here stated. It was the middle of a severe winter. Several days prior to the accident there had been alternate freezing and thawing, and ice had been formed upon this sidewalk. The accident happened on the 20th of December. The first snow that fell that season, as appeared by the official of the United States weather bureau, was on Monday, December 15th, and upon that day and the following about 7.3 inches of snow fell. On the 17th the thermometer was between 36° and 22°. On the 18th it was between 44° and 28°; on the 19th, between 34° and 23°; and on the 20th, the day of the accident, between 32° and 24°. The sidewalk was level and properly constructed, but was rendered slippery by this ice or snow. It seems to me quite evident that this condition was one that it was impossible for the city to remedy. All the ice and snow from all the sidewalks in New York could not be removed, and to require

the city to perform such a duty would be to require it to perform an impossibility. The city was not negligent in waiting for a thaw to come which would render the removal of this ice upon the sidewalk practicable. This was not a case where snow had been allowed to accumulate upon the sidewalk for a long period, and where no effort had been made by the abutting owner or the city to clean the sidewalk. The sidewalk appears to have been properly cleaned, and the condition existing seems to have been caused in some way by the melting of the snow or ice, and its subsequent freezing. Nothing here shown would justify a finding that the city was negligent in not removing every particle of ice from the many miles of sidewalk in the city, and there was therefore nothing to show negligence on the part of the defendant.