OWEN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   December 2, 1910.)

1. MUNICIPAL CORPORATIONS (§ 211*)—SCHOOL PROPERTY—SUPERVISION AND CONTROL.
    Premises on which is a public school of New York City, though owned by the city, are under the supervision and control of its board of education.

    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 211.*]

2. MUNICIPAL CORPORATIONS (§ 817*)—SIDEWALKS—CONSTRUCTION—PRESUMPTION.
    It is presumed that a sidewalk of a city was constructed according to a plan and on a grade established by the proper local authorities.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1725; Dec. Dig. § 817.*]

3. MUNICIPAL CORPORATIONS (§ 768*)—SIDEWALKS—INJURY FROM DEFECT IN PLAN—LIABILITY.
    A sidewalk of a city having been constructed according to a plan and on a grade established by the proper local authorities, the city is not liable for injury from one slipping thereon because of its grade.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1622–1625; Dec. Dig. § 768.*]

4. EVIDENCE (§ 19*)—JUDICIAL NOTICE—CONSTRUCTION OF SIDEWALKS.
    The court may take judicial notice that a slope of a sidewalk, towards the curb, of 1¾ inches in 11 feet, to carry off surface water, is not unusual.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 23; Dec. Dig. § 19.*]

5. MUNICIPAL CORPORATIONS (§ 792*)—SIDEWALKS—ICE AND SNOW—DUTY TO REMOVE—NOTICE.
    The duty of a city to remove snow and ice from a sidewalk is a qualified one, and becomes imperative only when a formation or obstruction dangerous to the public travel has been created, and the city has actual or constructive notice thereof, and after such notice sufficient time, within which by reasonable diligence it could remove it, has elapsed.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1652; Dec. Dig. § 792.*]

6. MUNICIPAL CORPORATIONS (§ 792*)—SIDEWALKS—NOTICE TO CITY OF ICE AND SNOW.
    Notice to the principal and janitor of a public school of New York City, and to the inspector of its board of education, of any dangerous accumulation of snow and ice on the sidewalk in front of the school premises, is not notice to the city; such persons being employés of such board which is an independent corporation, vested with the management and control of the city's property appropriated to educational purposes.

    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1652; Dec. Dig. § 792.*]

7. MUNICIPAL CORPORATIONS (§ 771*)—SIDEWALKS IN FRONT OF SCHOOLHOUSE —DUTY TO CLEAN.
    The board of education of the city of New York having assumed and customarily performed the duty of removing snow and ice from sidewalks in front of public schools, the city has the same right to rely on the performance of such duty in the first instance by such board that it has to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rely on private owners clearing their sidewalks where an ordinance de-
volves that duty on them.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
1627; Dec. Dig. § 771.*]

8. MUNICIPAL CORPORATIONS (§ 819*)—SIDEWALKS—ACCUMULATION OF ICE AND
    SNOW—EVIDENCE.
    Evidence, in an action for injury from slipping on a sidewalk, *held* not
to show an accumulation of snow and ice which required the city's atten-
tion, even if it had actual notice.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
1739–1743; Dec. Dig. § 819.*]

Appeal from Trial Term, New York County.

Action by Sophia B. Owen against the City of New York. From
a judgment on a verdict for plaintiff, and from an order denying a
motion for new trial, defendant appeals. Reversed, and new trial
granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

Theodore Connoly (Loyal Leale, on the brief), for appellant.
Headley M. Greene, for respondent.

LAUGHLIN, J. About midday on the 4th day of December, 1907,
the plaintiff was walking in a westerly direction on the northerly side-
walk of Seventy-Seventh street, between Columbus and Amsterdam
avenues, and when she arrived at a point, in front of Public School
87, about 75 feet east of Amsterdam avenue, she slipped and fell and
sustained the injuries to recover for which this action is brought. The
negligence with which the city is charged in the complaint is failure
to remove "the snow and ice which had accumulated and remained
in front of said premises during the night and up to the time when
said injuries were sustained," and "in the construction of the walk
in front of said premises in that said walk was built upon a slant
to the curb thereby causing an incline toward the street curb." There
is no other allegation in the complaint with respect to the construction
or slant of the walk, and the only other allegation with respect to
the snow and ice is as follows:

"That said snow and ice had remained all night and the entire morning
up to the time when said accident occurred, and no effort had been made
up to that time to clean off the walk in front of said premises or to take
off the ice."

It is not alleged that the city owned the adjacent premises, but it
is alleged that Public School No. 87 was under its supervision and
control. This cannot be true, for, regardless of the ownership, it
must be under the supervision and control of the board of education.

The plaintiff testified: That she was on her way from her board-
ing house at No. 105 West Seventy-Seventh street, to Amsterdam
avenue on an errand. That she observed that the children had been
sliding with sleds in front of the school, and she endeavored to go
towards the fence to avoid an accident. That "the sidewalk was full

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of ice and snow; that it was glassy ice, quite glassy, where the children were sliding. The children were sliding there on their sleds. They were coasting, coasting down the grade to Amsterdam avenue from the school. * * * There was much of a space where the children had been sliding that was worn down, quite a good deal. I avoided that space and went towards the fence. * * * When I fell my feet went up, I went back. Both of my feet did not slip from under me, the left foot. It had snowed the night before. I couldn't tell if there was very much snow in the streets. * * * There were no ashes or anything of that sort on the walk. There was so much ice there" that she could not tell whether there was a slant from the fence to the curb. That she had rubbers on. "That the condition of the walk was glassy, that is, a smooth surface; some parts near the fence were chunked up." On cross-examination she testified that the inner half of the walk next to the fence "was cleared off"; that the loose snow had been removed, but that "it was all chunked and rough"; that she fell "on the part of the sidewalk just where the sliding was. I fell on the slippery part, on the icy part; that was nearer the curb. I slipped and my foot went from under me."

It was shown that the width of the sidewalk at the point of the accident was 11 feet, that the slope from the fence to the curb was 1¾ inches, and that the slope towards Amsterdam avenue was about 3 feet in the 100 feet. The physician and surgeon who attended plaintiff testified: That the walk "was in a slippery condition. It was made worse by the boys making a sliding pond from the fence to the gutter." That the snow had not been removed from the premises in front of the schoolhouse. This witness was permitted to testify over the objection and exception duly taken, on the ground that the evidence was not within the issue, that the walk had not been cleaned all winter, and that the snow had been allowed to accumulate from a storm a day or two before and also the night before, and that the snow was not all removed, and the last storm covered up what remained on the sidewalk. It was shown by the records of the Meteorological Observatory in Central Park, at Sixty-Fourth street, and Fifth avenue, that three-quarters of an inch of snow fell on the 2d of December, two and one-half inches on the 3d, and that on the day of the accident it commenced snowing at 8:30 a. m., and continued until noon, and that one-half inch had fallen up to noon; that the temperature on the morning of the 4th of December was at freezing until about 5 a. m., when it fell to 31 degrees, and at 9 o'clock fell to 30 degrees, and remained at that temperature until afternoon. In behalf of the defendant, a police officer whose post included the scene of the accident, the principal, janitor, and assistant janitor of the school, and an inspector of the board of education were called as witnesses. Their testimony tends to show that all the loose snow and ice was removed from the walk early in the morning, and that at the time of the accident there was no accumulation of snow and ice on the walk, and that it was not in a dangerous or unsafe condition for use by pedestrians, and that the children had no sleds and used no sleds on the walk. The complaint was not amended so as

to charge that any of the snow or ice had been neglectfully allowed to remain on the walk prior to the day of the accident.

The court in submitting the case to the jury limited the liability of the city to the charge of neglect with respect to permitting snow and ice to accumulate on the walk, and instructed the jury that they were only to consider the evidence with respect to the grade or slope of the walk as bearing on the question as to whether the city performed its duty with respect to removing the snow and ice. Neither the charge in the complaint nor the evidence showed actual notice to the city with respect to the condition of the walk. The complaint contains no complaint with respect to the longitudinal· grade of the walk, but it does complain of the slope from the fence to the curb. It is to be presumed that the walk was constructed according to a plan and on a grade established by the proper local authorities, in which case the municipality would not be liable. Urquhart v. City of Ogdensburg, 91 N. Y. 73, 43 Am. Rep. 655; Id., 97 N. Y. 238. Moreover, there is no evidence that a slope towards the curb of 1¾ inches in 11 feet to carry off surface water is unusual, and the court might take judicial notice that it is not.

Counsel for the respondent argues that the longitudinal decline in the walk was a concurring cause of the accident notwithstanding the fact that no negligence was predicated thereon in the complaint and the question was not left to the jury. He cites Clemence v. City of Auburn, 66 N. Y. 334, to sustain his contention. In that case, however, the defect was properly pleaded, and it appeared that there was a longitudinal slope in the walk of six inches in three and a half feet made, by direction of the chairman of the street committee, who was without authority in the premises, to connect the grade of one street with another, and it did not conform to the lawfully established grade.·

Unless a greater duty devolved on the city with respect to the removal of snow and ice from walks in front of public schools than devolves on it with respect to snow and ice which accumulates in front of private premises, it is perfectly well settled under the authorities that no question of fact is presented for consideration of the jury in an action of this kind where the accident on which the complaint is based occurred within a day of the accumulation, and there was no evidence of actual notice to the city that there was a dangerous accumulation of snow and ice upon the walk. Harrington v. City of Buffalo, 121 N. Y. 147, 24 N. E. 186; Taylor v. City of Yonkers, 105 N. Y. 202, 11 N. E. 642, 59 Am. Rep. 492; Berger v. Mayor, 65 App. Div. 394, 73 N. Y. Supp. 74. The duty of the municipality to remove snow and ice is a qualified one and becomes imperative only when a formation or obstruction dangerous to public travel has been created and the city has actual or constructive notice thereof and after such notice there has elapsed sufficient time within which by reasonable diligence it could have removed the obstruction. Harrington v. City of Buffalo, supra.

In the case at bar there is no evidence of actual notice to the city that the sidewalk was in an unsafe or dangerous condition on account of the ice and snow thereon. It may be that the actual con-

dition of the sidewalk, whatever it was, was known to the principal, janitor, and assistant janitor of the public school, and also to the inspector· of the board of education; but notice to them was not notice to the city. They were neither officers nor employés of the city, but were appointed or employed by and were under and subject to the board of education, which is an independent corporation vested with the management and control of property of the municipality provided for or appropriated to educational purposes, having exclusive authority to appoint and employ school principals, janitors, and other employés. Gunnison v. Board of Education, 176 N. Y. 11, 68 N. E. 106; sections 1064, 1066, 1067, 1068, Greater New York Charter (Laws 1901, c. 466).

The title to lands purchased or acquired for public schools is in the city. Gunnison v. Board of Education, and sections of Greater New York Charter, supra. Probably the city owns this public school, but for aught that appears in the record it might have been rented by the board of education. No specific claim that any greater duty devolved on the city with respect to the walk in front of this public school than other walks is made. Usually, in cases of this kind, the defendant introduces an ordinance by which the municipality has devolved the duty in the first instance of removing snow and ice on the abutting property owners. No such ordinance was introduced here. It is, however, clearly to be inferred from the evidence that the board of education assumed and customarily performed the duty, in connection with the control and management of the public schools, of removing the snow and ice from the sidewalks in front of the same, and that it employed a janitor's assistant, janitors, and inspectors charged with the performance of this duty and equipped with the necessary appliances therefor, and that, in addition thereto, a supervisory duty in this regard devolved upon the principals of the schools. Although the board of education is an independent body, the city is obliged to furnish the necessary funds to maintain it and by a long course of business is presumed to have knowledge of these facts. On principle, it had, I think, the same right to rely on the performance of this duty in the first instance, by the board of education, until it had actual or constructive knowledge that it had not been performed, as it had to depend upon the compliance on the part of owners occupying private premises with an ordinance devolving the duty of removing ice and snow on them. Of course the city is not relieved of its duty with respect to the removal of snow and ice by the fact that the premises adjacent to the particular sidewalk are occupied for educational purposes, and it was so held in Pymm v. City of New York, 111 App. Div. 330, 97 N. Y. Supp. 1108. Although in that case the question as to whether the duty of the city with respect to a walk in front of a public school owned by it was any different from its duty with respect to other walks was not expressly considered, it appears to have been assumed that there was no difference in such duty.

If the inferences most favorable to the plaintiff would have availed her, of course, the court could not dispose of the case as a matter of law on conflicting testimony; but we are of opinion that there

was no evidence sufficient to take the case to the jury on any sustainable theory, and that therefore the court erred in denying defendant's motion for a direction of a verdict. There was no evidence that there was an accumulation of snow and ice upon the walk which required attention by the city even though it had actual notice. Doubtless the children in coming to and going from school and at hours of intermission while the snow was falling or on the walk attempted to and did slide on it; and, with the temperature just below the freezing point, doubtless patches of slippery ice were formed, and this was unavoidable; but there is no evidence that there was or had been an accumulation of ice and snow forming a dangerous obstruction to public travel.

It follows therefore that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.