[No. 10049.  Department One.  August 14, 1912.]

OLE LENNON et al., Respondents, v. THE CITY OF SEATTLE, Appellant.[1]

MUNICIPAL CORPORATIONS — SEWERS — DEFECTIVE CONSTRUCTION— NEGLIGENCE—EVIDENCE—SUFFICIENCY. A *prima facie* case of negligence in the construction of a sewer, rendering the city liable for resulting damage to property, is made out, where it appears that an ordinary eight-inch tile sewer pipe 174 feet long with a drop of 90 feet was installed to convey all sewage from an upper fifteen-inch pipe of more than three times the capacity of the smaller pipe, which would subject the pipe to immense pressure in case of stoppage, that on a previous occasion an eight-inch pipe burst in the same location, after which the city put in the eight-inch pipe in question under similar conditions, which again went out in practically the same place carrying earth and a bulkhead with it.

[1]Reported in 125 Pac. 770.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 31, 1911, in favor of the plaintiffs, after a trial before the court without a jury, in an action for damages to real property. Affirmed.

*James E. Bradford* and *W. F. Van Ruff*, for appellant.

*Leopold M. Stern* (*J. W. Russell*, of counsel), for respondents.

CROW, J.—This action was commenced by Ole Lennon and Sirene Lennon, his wife, against the city of Seattle, to recover damages to real estate. From a judgment in plaintiffs' favor, the defendant has appealed.

Some years since, appellant installed, and has since maintained, a public sewer system, in which a connection extended down a steep gulch from the intersection of East Spruce street and Lakedell avenue to Central avenue. The length of this connection was about one hundred and seventy-four feet, and in that distance it descended or fell about ninety feet. The upper sewer on East Spruce street was constructed with tile sewer pipe fifteen inches in diameter. The lower sewer on Central avenue was constructed of tile sewer pipe about twelve inches in diameter, and the connecting sewer line from East Spruce street to Central avenue was constructed with tile sewer pipe eight inches in diameter. About 1906, a like connection from East Spruce street to Central avenue ran down the same gulch on a slightly different line. At that time it broke and damaged real estate of one Mrs. Getto. She filed a claim for damages, which was adjusted by the city purchasing her lots located on Lakedell avenue near the upper portion of the gulch and East Spruce street. Thereafter the city slightly changed the course of the connecting sewer by constructing a new line with eight-inch tile sewer pipe through the Getto lots. It also constructed on the rear of the lots and above the sewer a large bulkhead of logs to retain earth with which it filled and graded the lots.

Respondents own two lots below the Getto lots, near the point where the connecting line entered the lower sewer on Central avenue. There was no evidence that respondents' lots were connected with, or in any manner benefited by, the sewer system. Their lots, which were improved with a residence, an outbuilding, a fence, and numerous fruit trees, were much lower at the rear toward the gulch and sewer than at the front. Shortly prior to, or about January, 1910, the appellant city graded Lakedell avenue and removed earth therefrom, which it deposited on the Getto lots above, over, and across the bulkhead. Shortly thereafter the bulkhead gave away, and the eight-inch connecting sewer pipe broke, with the result that the bulkhead, earth, and sewage were precipitated down, upon, and across the rear of respondents' lots, carrying away and destroying their fence, outbuilding and fruit trees. To recover the resulting damages, this action was instituted.

The above facts were shown by undisputed evidence. Respondents introduced further evidence to show that the eight-inch sewer was installed to convey all sewage from the upper fifteen-inch pipe on East Spruce street to the twelve-inch pipe in Central avenue; that the eight-inch pipe was one hundred and seventy-four feet long, dropped ninety feet, and was installed by the city on land owned by it; that it passed under or through the log bulkhead; that the capacity of the fifteen-inch pipe was about three and one-fourth times that of the eight-inch pipe; that in the event of the lower pipe becoming clogged, the pressure of water from above on the inside of the eight-inch pipe would be about forty pounds to the square inch, and that the eight-inch pipe, which would have to withstand this enormous pressure, was only an ordinary tile sewer pipe. Upon this evidence respondents make a calculation showing that, in the event of the eight-inch pipe becoming clogged or stopped at its lowest point, where it connected with the Central avenue sewer, it would be subjected

to an enormous and excessive pressure which would gradually decrease from that point to its upper portion at East Spruce street. After these facts had been shown and respondents had proven their damages, appellant introduced evidence as to the extent of the damages, and rested without offering any evidence as to the construction of the sewer, the method of its maintenance, or the cause of the break.

Appellant contends that its challenge to the sufficiency of the evidence should have been sustained; that the respondents have shown no negligence on its part; that the doctrine of *res ipsa loquitur* cannot be applied to a case of this character; that no previous notice to appellant of any defect or obstruction in the sewer has been shown; and that the proof of the mere happening of the break is insufficient to sustain a recovery. Acts of municipal officers in adopting drainage plans and in determining when and where sewers are to be constructed are recognized as *quasi* judicial, as they involve an exercise of deliberate judgment and discretion. It has frequently been held that, in exercising such judgment and discretion or in adopting sewer systems and plans, municipalities will incur no liability for such acts, as it will ordinarily be presumed, in the absence of any showing of actual negligence, that reasonable care has been used. While the elementary rule is as stated, we do not think it should prevent a recovery on the facts before us. It has been shown that on a previous occasion an eight-inch connection went out in substantially the same location, causing damage to the Getto lots; yet the city constructed another eight-inch tile connection in practically the same location, under similar conditions, built the bulkhead which it covered with earth, and that the sewer again went out in practically the same place, carrying the bulkhead and earth with it.

These facts, coupled with the certainty of an immense pressure on the eight-inch tile in the event of a stoppage, made at least a *prima facie* case of notice to the city, and negli-

gence as against the city. Appellant made no effort to dis-
close the true cause of the break, or to show that it was
without negligence. It was in a better position to under-
stand the situation and to explain the true cause of the ac-
cident than were respondents. Without any attempt to do
so, it now argues that respondents have proven no negligence,
and should be precluded from recovery. This position can-
not be sustained. Respondents' rights have been invaded.
Their property has been destroyed without fault or negli-
gence on their part. The destruction was caused by an
agency under the absolute dominion and control of the city.
Sewage, earth, and debris have been precipitated upon re-
spondents' property, and thereby they have been injured.

In *Ashley v. Port Huron*, 35 Mich. 296, 24 Am. Rep. 552,
a well-considered case, in which damage to private property
was occasioned by a sewer, Judge Cooley, after citing and
discussing numerous decisions, well said:

"It is very manifest from this reference to authorities, that
they recognize in municipal corporations no exemption from
responsibility where the injury an individual has received
is a direct injury accomplished by a corporate act which is
in the nature of a trespass upon him. The right of an in-
dividual to the occupation and enjoyment of his premises is
exclusive, and the public authorities have no more liberty to
trespass upon it than has a private individual. If the cor-
poration send people with picks and spades to cut a street
through it without first acquiring the right of way, it is
liable for a tort; but it is no more liable under such circum-
stances than it is when it pours upon his land a flood of
water by a public sewer so constructed that the flooding
must be a necessary result. The one is no more unjustifiable,
and no more an actionable wrong, than the other. Each
is a trespass, and in each instance the city exceeds its lawful
jurisdiction. A municipal charter never gives and never
could give authority to appropriate the freehold of a citizen
without compensation, whether it is done through an actual
taking of it for streets or buildings, or by flooding it so as
to interfere with the owner's possession. His property right
is appropriated in the one case as much as in the other."

In *Roberts v. Dover*, 72 N. H. 147, 153, 55 Atl. 895, a sewer case, the court, discussing the duties and liability of a municipal corporation, said:

"In *Rowe v. Portsmouth*, 56 N. H. 291, it was held that in maintaining a public sewer a city is bound to use that degree of care and prudence which a discreet and cautious individual would use if the whole loss or risk was to be his alone. The case renders unnecessary a discussion of the liability of a city or town, which builds a sewer under legislative authority, for defects in the plan adopted. When, having constructed a sewer, it connects it with other sewers and drains, overtaxing its capacity, and allows insoluble materials to accumulate in it and obstruct the flow of the water, causing it to flow back upon private property, its liability for the resulting damage does not differ from that of an individual, who so unreasonably manages his property as to cause damage to the adjoining property of his neighbor. The fact that it is a public corporation, performing certain public duties, does not exempt it from liability for negligence when performing a work not imposed upon it as a public agent, but voluntarily assumed by it under a legislative license. Having undertaken the construction and management of a system of sewerage for the local accommodation and convenience, its duties to individuals liable to be damaged thereby is measured by the same rule of ordinary care and prudence under the circumstances as would be applied if it were a private business corporation, partnership, or individual engaged in the same work."

The appellant has made no attempt to show the cause of the break which damaged respondents, but asserts its exemption from liability on the ground that no negligence has been shown on its part in the adoption of the original system and plan which it installed. If the system had been properly adopted and afterwards maintained, it would seem that, in the ordinary course of events, it would not have damaged respondents in the manner here shown. We therefore conclude that the *prima facie* case of notice and negligence which respondents have made imposed upon appellant the duty of introducing at least sufficient proof to meet the same. In

*King v. Kansas City,* 58 Kan. 334, 49 Pac. 88, the court said:

"The city cannot without liability collect sewage and filth and precipitate it upon the property of a citizen, even if the plan is devised in good faith and the best material is used in the construction. It is immaterial from which end of the sewer the discharge is made; the consequence and liability are necessarily the same. 'Courts of the highest respectability have held that if the sewer, *whatever its plan,* is so constructed by the municipal authorities as to *cause a positive and direct invasion* of the plaintiff's private property, as by collecting and throwing upon it to his damage water or sewage which would not otherwise have flowed or found its way there, the corporation is liable.' 2 Dillon, Municipal Corporations (4th ed.), § 1047. See, also, *Ashley v. Port Huron,* 35 Mich. 296; *Tate v. St. Paul,* 56 Minn. 527; *Seifert v. City of Brooklyn,* 101 N. Y. 136; *Tehn v. San Francisco,* 66 Cal. 76; *North Vernon v. Vogler,* 89 Ind. 77; *Orange v. Field,* 37 N. J. Eq. 600."

The views here expressed are in harmony with the holding of this court in *Hayes v. Vancouver,* 61 Wash. 536, 112 Pac. 498, where we quoted from *Ashley v. Port Huron, supra,* the identical excerpt above quoted, and said:

"The decisions of the courts relating to damage caused by cities in maintaining sewers and drains, especially where the damage is the result of a positive direct act of the city, seem to be quite uniform in holding that the city is liable for such damage, and that it cannot escape upon the plea that it was the result of the performing of a purely governmental act."

A *prima facie* case of negligence sufficient to sustain the judgment was made by the respondents which, in the absence of any showing by the appellant, should be sustained. The judgment is affirmed.

PARKER, GOSE, and CHADWICK, JJ., concur.