### DETERMINED BY

# THE SUPREME COURT

#### OF THE

## STATE OF WYOMING

[OCTOBER TERM, 1926]

## QUEST v. TOWN OF UPTON*
(No. 1300; Jan. 25, 1927; 252 Pac. 506.)

MUNICIPAL CORPORATIONS—LIABILITY FOR STREET ACCIDENTS—DE-FECTIVE SIDEWALKS—NEGLIGENCE—CONSTRUCTION ACCORDING TO PLAN FURNISHED BY ENGINEER.

1.  Municipality must keep its streets and sidewalks in reason-ably safe condition for ordinary use by public, but is not an insurer against accidents, where it adopts reasonable plan of improvement and has no notice of latent defect therein.

2.  In action against municipality for injury resulting from negligent plan of construction of sidewalk, case is for jury only, where court can say, as matter of law, that such plan of construction was negligent.

3.  Town *held*, as matter of law, not liable for injury to pedes-trian on gutter covering, constructed according to reason-ably safe plan advised by county surveyor, who was civil engineer; town being justified in accepting his advice.

4. Town council, in absence of evidence to contrary, cannot be charged with negligence in seeking and accepting advice of county surveyor as to plan for constructing gutter covering.

*See Headnotes: (1) 28 Cyc. p. 1341 n. 29; p. 1359 n. 49. (2, 3) 28 Cyc. p. 1370 n. 91; p. 1504 n. 45 New. (4) 28 Cyc. p. 1370 n. 91.

Appeal from District Court, Weston County; Harry P. Ilsley, Judge.

Action by S. M. Quest against the Town of Upton. Judgment for plaintiff, and defendant appeals.

*John P. Rusk,* and *Metz, Sackett & Metz,* for appellant.

There was no evidence of negligence; the plan of construction adopted by the town was reasonably safe for use of the public; there was no evidence of notice to the town of any defect prior to the accident; the rule that no notice is required of defects in original construction as distinguished from needed repair, as stated in 28 Cyc. 1386, is subject to limitation unless so dangerous as to show want of reasonable care and diligence; Mayor v. Wilson, 14 A. S. R. 150, and note; Stoddard v. Winchester, 154 Mass. 149, 26 A. S. R. 223; Rochefort v. Attleborough, 154 Mass. 140, 26 A. S. R. 221; Pearl v. Township, 91 N. W. 209. If the defect was not one inherent in the original plan of construction, the town is not chargeable with notice; Wyoming Co. v. Stanko, (Wyo.) 135 P. 1090; Montezuma v. Wilson, (Ga.) 14 A. S. R. 150; Dittrich v. Detroit, (Mich.) 57 N. W. 125; Jackson v. Boone, (Ga.) 20 S. E. 46; Owen v. New York, 126 N. Y. S. 38; City v. Benton, (Ky.) 152 S. W. 241; Beck v. Germantown, 77 A. 448; Atchinson Co. v. Taylor, 57 P. 973; Cunningham v. Denver, (Colo.) 45 P. 356. The gutter was constructed according to engineer's plans and the sufficiency of the plan was not a question for the jury, unless so dangerous that reasonable minds must agree that it was unsafe; Ward v. City, (Utah) 151 Pac. 905; Healy v. Chicago, 131 Ill. App.

183; Gould v. Topeka, (Kan.) 4 P. 822; Brockman v. City, 136 S. W. 865; McIntyre v. City, 86 A. 300.

*E. C. Raymond* and *R. G. Diefenderfer,* for respondent.

There is nothing in the evidence showing that any engineering plan had been adopted; there was no evidence that the county surveyor, employed by the city, was a competent engineer; there was no evidence that the plan of construction had been prepared by a competent engineer; the county surveyor was employed; under the statute in force at that time, 1542 C. S., no requirement of qualification was fixed for county surveyors; respondent was injured by a loose plank in the gutter, and violently thrown; the jury believed the testimony of the respondent and his witnesses; appellant had actual knowledge of the defect; the facts are quite similar to those in the case of Village of Jefferson v. Chapman, 20 N. E. 33; the loose plank, shortly after being replaced by appellant, turned edgewise, tripped respondent and seriously injured him; see Evans v. Iowa City, 100 N. W. 1112; the case of Coal Co. v. Stanko, cited by appellant, is not applicable to the facts; notice is unnecessary to one who perpetrates an act causing injury; the construction of the walk in controversy was inherently dangerous and verdict was small considering the severity of the injury.

BLUME, Chief Justice.

S. M. Quest, the plaintiff, respondent here, sued the Town of Upton on account of an injury received in said town on April 29, 1922. At the close of the evidence, defendant made a motion to direct a verdict for the defendant, which was denied. The jury returned a verdict for $700. Plaintiff made a motion for judgment, notwithstanding the verdict, which was denied, and judgment was entered for plaintiff in the sum of $700—which was about the amount paid out by plaintiff for hospital and medical expenses.

In 1920, the Town of Upton, a municipal corporation, adopted a general improvement-plan upon the advice of

Silas Lowell, a civil engineer and County Surveyor, and in accordance with this plan, and in fact under the direction and supervision of said engineer, laid out concrete side-walks and cross-walks along and across Piney street in said town, and gutter-drains and gutter-coverings connecting the cross-walks with the sidewalks. The gutter-covering in question in this case was 4½ feet in width and was con-structed of heavy planks 19 inches long and 1½ inches thick. The planks fitted into and were supported by a re-cess 1½ inches wide and 1½ inches deep in the concrete cross-walk, and a similar recess in the concrete sidewalks, so that the top of the planks was flush with the surface side-walk and the surface cross-walk. Concrete shoulders at each side prevented lateral movement of the planks, but the planks were not fastened down but were held in place by their own weight. On the morning of April 29, 1922, the plaintiff crossed this gutter-covering and it was at that time level, flush with the concrete walks, and no defect was discovered therein. About fifteen or twenty minutes later, he, with some companion, carried a hog across this gutter-covering, and one of the planks tipped up, by reason of which plaintiff fell and was severely injured. Just how the tipping of the plank was caused is unknown. About an hour previous to the accident, the marshal of the town had examined the gutter-covering, had taken up the planks, put them back to fit in tightly and level with the concrete walks, and no defect seemed to exist in the covering at that time. The planks were sound, apparently without fault, and in substantially the condition in which they were at the time of the original construction. No accident, such as befell the plaintiff, had happened in the town previously. There was some testimony to the effect that the plan adopted by the town, and the construction in accordance therewith, was unsafe. Other testimony, however, was to the con-trary. Only one civil engineer, Mr. Gwillim—a man of con-siderable experience in his profession—testified in the case. His testimony was to the effect that the plan adopted, and

the construction in accordance therewith, was reasonably safe.

It is apparent, therefore, that plaintiff could not recover herein on the theory that the town was negligent in repairing the gutter-covering in question, and could recover, if at all, only upon the theory that the plan of the construction, as well as the construction itself, was faulty. The defendant contends that it is not liable, under these circumstances.

Broadly, speaking, it is the duty of a municipality to keep its streets and sidewalks in a reasonably safe condition for the ordinary use by the public, and it might, perhaps, be logically argued that it matters not from what source the defect arises; that a defect in plan is just as dangerous as a defect arising from any other source. On the other hand, a municipality cannot be held to be an insurer against accidents. It would seem to be harsh to hold it responsible where it has adopted and carried out a reasonable plan of improvement and where it has no notice of a latent defect therein. It was well said in the case of Shippey v. Village, 65 Mich. 494, 32 N. W. 741 as follows:

"All municipal ways must be put under the supervision of the public authorities. It is for them to decide what works shall be undertaken and how the general safety and convenience requires them to be built. There must be some final arbiter as to the proper way of doing this. In many cases plans more or less final must be considered, and taxes or assessments levied to complete them. If it can be referred to a jury to determine on the propriety of such action, there will be as many views as there are juries, and it can never be definitely known when the municipality is safe. It is beyond human ingenuity to devise a plan which is not capable of danger to heedless persons or to young children, who cannot be expected to appreciate the danger. Reasonable safety is what the law requires and no more."

While the authorities are not altogether uniform, it may be said that many courts at least have developed a doctrine to the effect that there is a limitation in liability of a municipality for defects in its streets and sidewalks, if such defects exist in the improvement-plan adopted and carried out by the municipality. Courts differ as to the extent of this limitation. One of the leading cases upon the subject is City of Lansing v. Toolan, 37 Mich. 152, in which the court, through Chief Justice Cooley, said as follows:

"In planning a public work, a municipal corporation must determine for itself to what extent it will guard against possible accidents. Courts and juries are not to say it shall be punished in damages for *not* giving to the public more complete protection, for, as shown in Beckman's case (34 Mich. 125), that would be to take the administration of municipal affairs out of the hands to which it has been intrusted by law. What the public have the right to require of them is that in the construction of their works, after the plans are fixed upon and in their management afterwards, due care shall be observed, but negligence is not to be predicated of the plan itself."

The broad principle of non-liability, announced in this case, seems to have been followed in a number of other cases. Urquhart v. Ogdensburg, 91 N. Y. 67, 43 Am. Rep. 91, Augusta v. Little, 115 Ga. 124, 41 S. E. 238; Gallagher v. Tipton, 133 Mo. App. 557, 113 S. W. 674; Hays v. Columbia, 159 Mo. App. 431, 141 S. W. 3; see McQuillan, Municipal Corporations, sec. 2633. The reasons urged in support of the principle are that the adoption of a plan for a public improvement is of a legislative or quasi judicial nature, involving the exercise of judgment, and that the corporate authorities in so doing act as public officers, rather than as agents of the city. Some authorities, however, have criticised this statement of the rule as being too broad, and hold that if such plan, and the construction in accordance therewith, is manifestly dangerous, so as to show negligence rather than error of judgment, liability exists.

Elliott, Roads and Streets, sec. 565. Gould v. Topeka, 32 Kans. 485, 4 Pac. 822, 49 Am. Rep. 496; Teager v. Flemmingsburg, 109 Ky. 746, 60 S. W. 718, 53 L. R. A. 791; 95 Am. St. Rep. 400; Owens v. Chicago, 162 Ill. App. 196; Healey v. Chicago, 131 Ill. App. 183; Morris v. Salt Lake City, 35 Utah 474, 101 Pac. 373; Ward v. Salt Lake City, 46 Utah 616, 151 Pac. 905; Watters v. Omaha, 76 Nebr. 855, 107 N. W. 1007, 14 Ann. Cas. 750; Hoyt v. Danbury, 69 Conn. 341, 37 Atl. 1051; Conlon v. St. Paul, 70 Minn. 216, 72 N. W. 1073; Gower v. Madisonville, 182 Ky. 89, 206 S. W. 27. This rule is stated in the case of Gould v. Topeka, supra, as follows:

"After a careful consideration of this entire question, we have come to the conclusion that where a street, as planned or ordered by the governing board of the city, is so manifestly dangerous that a court, upon the facts, could say as a matter of law that it was dangerous and unsafe, the rule contended for by the defendant should not have any application, and the city should be held liable; but where, upon the facts, it would be so doubtful whether the street, as planned or ordered by the governing board of the city, was dangerous or unsafe or not that different minds might entertain different opinions with respect thereto, the benefit of the doubt might properly be given to the city, or rather to its governing board that planned or ordered that the streets should be placed in such a condition, and the rule should be held to apply and the city should not be held to be liable."

In the case of Teager v. Flemmingsburg, supra, the court said:

"When the plan is one that many prudent men might approve; or where it would be so doubtful upon the facts whether the street as planned or ordered by the city governing board was dangerous or unsafe or not—that different minds might entertain different opinions with respect thereto—the benefit of the doubt should be given the city, and it should not be held liable."

And the same court in Gower v. Madisonville, supra, stated the rule more fully as follows:

"Under the rule adopted in this state, municipalities are allowed a broad discretion as to the character of the street improvement to be made, when and where it shall be made, and the material out of which it shall be constructed, and when the city adopts a plan or determines the character of construction of a sidewalk, or other public way, it will not be liable for injuries resulting from a dangerous or defective condition due solely to a mistake of judgment in the plan or construction adopted, and this rule is not limited to cases where the plan adopted was determined in advance, but applies equally where it was ratified and adopted by the municipality after the work was constructed, unless the improvement, when made according to the plan, was obviously or palpably unsafe and dangerous for the use for which it was intended. While the city is under the duty to keep its streets in a reasonably safe condition for public travel, it is not an insurer of the safety of travelers. A sidewalk constructed according to a plan adopted by the municipality, and which by its legislative body was considered reasonably safe, may not become the basis for an action for damages on account of personal injuries received by pedestrians slipping and falling thereon, unless, after the walk was completed in accordance with the plan adopted, it was so obviously or palpably dangerous as to impress the mind of a reasonably prudent person as unsafe, or as said in the case of Clay City v. Abner, 82 S. W. 276, 26 Ky. Law. Rep. 602, it was 'so obviously dangerous as would show a failure to consider or a purpose to misconstruct the work.'"

In the case of Conlon v. St. Paul, the Supreme Court of Minnesota said:

"If it is debatable which is the better plan—if reasonable men might differ as to which is a better plan—the decision of the city authorities on the question is conclusive and cannot be reviewed by the courts. Neither the court nor the jury can substitute its judgment for that of the city authorities in such a case. But if there was such gross error of judgment as to show that in fact the city

authorities never exercised an intelligent judgment at all, the city may be held liable for constructing or maintaining the improvement on the defective plan or scheme adopted.''

In Healey v. Chicago, supra, the syllabus is as follows:

''The jury is entitled to pass upon a personal injury case in which it is alleged that the injury resulted from the negligent plan of construction adopted with respect to a sidewalk, only where the court can say, as a matter of law, that such plan of construction was negligent.''

It would seem that we should follow the rule as here mentioned, at least as applied by the cases last cited. This seems to be conceded by counsel for respondent, but it is contended that the facts of this case do not bring it within the rule. It is claimed in the first place that it is not shown that the crossings were constructed according to the plan adopted. We think, however, that counsel are in error in this. The witness Hansen directly testified that the construction was in accordance with the plan, and other testimony, showing the condition of the crossing in question on the morning of the accident, corroborates that testimony. It is next contended that the rule mentioned does not apply because it was not proven that the plan in question was adopted upon the advice of a competent civil engineer; in other words, that it was not shown that Lowell, who made the plans and supervised and directed the construction in accordance therewith, was in fact a competent and skilled engineer. We are not certain, if this fact is material, upon whom should rest the burden of proof thereof. It was said in the case of Lennon v. City of Seattle, 69 Wash. 477, 125 Pac. 770, that it would ordinarily be presumed, in the absence of any showing of actual negligence, that reasonable care was used in adopting plans for municipal improvements. So in Treadwell v. Yonkers, 192 App. Div. 421, 182 N. Y. S. 675, the court seems to proceed upon the theory that the burden to prove negligence, in the adoption of a

plan, is upon the plaintiff.  See also Hays v. Columbia, su-
pra; Owens v. New York, 141 App. Div. 217; 126 N. Y. S.
38.  We need not, however, decide the question.  Some of
the cases above cited, but some of them only, seem to assume
that it must appear that the plan was adopted upon the
advice of skilled civil engineers.  But upon examination it
will be found that in all of these cases the advice of such
men was essential, because of engineering difficulties.  El-
liott on Roads and Streets, sec. 565, note, says as follows:

"Where no more skill or knowledge is required then
such as men of fair, ordinary knowledge and experience
possess, then doubtless there is no wrong in entering upon
the work without the advice or assistance of skilled men.
But suppose the councilmen of a town or village should
undertake to construct a suspension-bridge, upon a plan
of their own, across a great river like the Hudson, the
Mississippi or the Ohio.  Would anyone assert that they
had used due care?"

We do not know that the plan in question in this case
involved such difficulties that it required the advice of a
skilled civil engineer, but let us assume that it did.  Silas
Lowell, as the evidence fairly indicates, was a civil engi-
neer.  He had been elected by the people of Weston Coun-
ty as County Surveyor, and it is well known that county
surveyors have generally been taken from among civil en-
gineers.  The town of Upton is a small community and
is situated in a sparsely settled county, in which the num-
ber of civil engineers is necessarily limited, and perhaps no
one but Silas Lowell (who appears to be now deceased) was,
at the time in question, a civil engineer in that county.
And we think that under the circumstances in this case, the
town council of Upton was justified in seeking and accept-
ing the advice of a man whose ability had apparently been
approved by the electors of Weston county, and that in do-
ing so they should not, in the absence of evidence to the con-
trary, be charged with negligence in connection therewith.

While there is testimony in the case, as heretofore stated, that the plan adopted by the town was not reasonably safe, the preponderance of the testimony shows the contrary. The evidence in the case does not justify the claim of counsel for the respondent that the town constructed a trap. A case very closely in point is Hays v. City of Columbia, supra. The case involved a gutter-crossing, as in the case at bar. This crossing had been constructed of boards, as the crossing in the case at bar. These boards were fastened to each other so as to make a platform, but, as in the case at bar, were not fastened down but were kept in place by their own weight. It was claimed in that case, as it is claimed in this, that the municipality was negligent in failing to provide a fastening or means by which to prevent the platform from slipping and sliding thereby rendering it unsafe and dangerous to the traveling public. It appears in that case that the covering, in fact, was often displaced by wagon wheels striking it, or by other causes. Yet the court held that the defect, being one inherent in the plan, rendered the municipality immune from liability. There is no evidence in the case at bar that the gutter-crossing in question or any part thereof had ever been displaced by any travelers thereon. No accidents like that for which respondent sues had ever happened on any of these crossings in the town. We think it clear, accordingly, that we cannot say as a matter of law that the crossing in question was manifestly dangerous and the municipality cannot, therefore, be held liable herein. In fact it is doubtful that the jury found any negligence. It rendered a verdict for the plaintiff only for approximately the amount of his hospital and medical bills, despite the fact that the evidence tends to show that plaintiff sustained severe injuries. It would seem that the verdict was based on sympathy, and, while we cannot help but be as sympathetic as the jury, we cannot let that sympathy override a principle of law which we deem to be sound. The motion for a directed verdict and that for judgment notwithstanding the verdict should have

been sustained. The judgment of the lower court is accordingly reversed, with directions to enter judgment for the defendant.

*Reversed.*

POTTER, J.; and KIMBALL, J., concur.