MYRTLE BELL SAVAGE

*Plaintiff and Appellant*

vs.

TOWN OF LANDER, WYOMING

*Defendant and Respondent.*

(No. 2759; April 2nd, 1957; 309 Pac. (2d) 152)

158

For the plaintiff and appellant, the cause was submitted upon the brief of John J. Spriggs, Jr., and John J. Spriggs, Sr., both of Lander, Wyoming and oral argument by John J. Spriggs, Sr.

For the defendant and respondent, the cause was submitted upon the brief and also oral argument of Arthur E. Oeland of Lander, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, J. J.

162

## OPINION

Mr. Justice Parker delivered the opinion of the court.

On October 31, 1953, Plaintiff parked her car diagonally on the south side of Main Street in the town of Lander with the right front wheel immediately to the left of a gutter drain inlet. She stepped out of the car on the driver's side, entered a nearby store, and when she returned, went to the opposite (right hand) side of the car because her husband had shifted to the driver's seat. As she stepped off the curb into the street adjacent to the inlet, she slipped "off of something" and fell, with her leg extended into the inlet. Her leg was broken, and she suffered other injuries, for which she brought an action against the town in the sum of $10,614.

The case was tried before a jury; and at the conclusion of the testimony, the defendant town of Lander moved for a directed verdict on the grounds that plaintiff had failed to prove either the allegations of her petition or any actionable negligence. After hearing argument, the trial court orally discussed the prob-

lem, granted the motion for the directed verdict as requested, and entered judgment for defendant.

Plaintiff's present appeal urges several errors centering upon the trial court's alleged misapprehension of the law and misinterpretation of the evidence in directing a verdict in favor of the defendant. These contentions of plaintiff are based upon several propositions set forth in the brief: That the city had complete control of its streets; owed plaintiff the duty of keeping them in a reasonably safe condition; and that defendant breached this duty by maintaining a dangerous, unguarded, and unprotected gutter drain into which plaintiff stepped or fell causing the injury in question.

Any analysis of an action for personal injury against a town must be considered in the true legal perspective governing the tort liability of a municipality—as distinguished from a private corporation or an individual. The law on this subject is too well settled to admit of serious controversy. A municipal corporation has a dual nature or capacity, one public, and the other private, and exercises twofold functions and duties. The rule is generally recognized that in the absence of statutory provision there can be no recovery against a municipal corporation. for injuries occasioned by its negligence or nonfeasance in the exercise of a function which is essentially governmental in character. On the other hand, a city's actions in its private or proprietary capacity are governed by the same rules of liability for wrongful acts as apply to private corporations or individuals. See 38 Am.Jur., Municipal Corporations § 572; 63 C.J.S., Municipal Corporations § 746; 18 McQuillin, Municipal Corporations, 3d ed., p. 132 ff.; 2 Shearman and Redfield, Negligence, rev.ed., p. 694 ff.

With this in mind, we next consider the requirements of pleadings in tort actions against municipalities. This, too, is well settled and needs no extended discussion. In a tort action against a municipal corporation because of a defect or obstruction in a public street, gutter, drain, or sewer, the petitioner should set out with reasonable certainty the acts on which the liability is based and all facts essential to constitute a legal cause of action for negligence. This includes, among other things, the duty of the defendant, the negligence or breach of that duty, proximate cause of the injury, the existence and nature of the defect or obstruction, and whether or not the alleged negligence was committed in the performance of a governmental or a proprietary function. 63 C.J.S., Municipal Corporations § 934. In that source at p. 400 it is stated:

"* * * as a rule, plaintiff should specifically allege facts showing that the negligence was not committed in the governmental capacity of defendant but that it was committed in the performance of a proprietary, ministerial, or corporate function. * * *"

A correlative to the last named rule of law is found in the same authority in § 938 which states at p. 419,

"An activity of a municipality is presumed to be governmental rather than proprietary."

Briefly stated, plaintiff's petition alleges that defendant was a "municipal corporation" in "complete control" of Main Street on which it had "installed * * * a certain parking meter"; that on the date of the accident defendant "did neglect and fail in its said duty * * * to keep Main Street * * * in a safe and reasonable condition * * * and did negligently, willfully, and knowingly construct and maintain * * * on said Main Street a dangerous, unguarded * * * unprotected and

unmarked gutter drain"; that the accident occurred; that plaintiff was damaged in the amount claimed; and that she had theretofore presented to defendant a verified claim for the damage.

In urging that the directed verdict was improper, plaintiff states, "The rule of law applicable to this case is that on motion for a directed verdict no evidence for defendant is considered. The evidence of defendant is disregarded." This statement is too broad and is not substantiated by previous holdings in this State. See In re Lane's Estate, 50 Wyo. 119, 58 P.2d 415, 60 P.2d 360, wherein at p. 363 the court states:

"Appellant maintains that the opinion of the court in this case was erroneous in considering testimony given by respondents, and that, in reviewing the action of the trial court in granting the motion for a directed verdict, only the evidence introduced in behalf of the contestant could be considered, with all reasonable inferences to be drawn from it. This proposition is inaccurate, and the contention cannot be upheld. 64 Corpus Juris, 443, states the rule as to what evidence should be considered on a motion to direct a verdict in this language: 'The testimony to which the court is to look for circumstances making out the case of the adverse party *includes the whole testimony* in the case and is not limited to that offered by such party but extends as well to that produced by the movant.' " (Emphasis supplied.)

In the instant case, we find no substantial conflict of the evidence except on the point of whether or not the plan was inherently dangerous, which, as will be discussed later, is a question within the province of the court, not the jury.

As previously indicated the rules of pleading in tort actions against municipalities required plaintiff to

plead not only the alleged wrong causing the injury but also the capacity in which the town of Lander was said to have acted. As we have seen, plaintiff in her petition made no reference to the capacity in which the town of Lander was said to have acted. On the contrary her allegation failed to indicate any recognition of a distinction between the tort liability of private corporations and public corporations. (Additionally, her allegations of negligence were most general—to the effect that defendant did "construct and maintain" the dangerous drain—and her statement of causation was peripheral rather than direct,) It is true that the trial court overruled defendant's demurrer, allowing the allegations of plaintiff's petition to stand; and defendant thereafter entered a general denial. Nevertheless, defendant was not thereby deprived of introducing evidence concerning the approval or nonapproval of the plan of construction and of the capacity in which the town was acting—facts which plaintiff of right should have pleaded. The burden of proof as to the adoption of an approved plan was discussed in Quest v. Town of Upton, 36 Wyo. 1, 252 P. 506; but that point was found nonessential to the disposition of the case. Nevertheless, the court's statement on this subject, 252 P. at pp. 508, 509, is significant to us in the consideration of the instant matter:

"* * * We are not certain * * * upon whom should rest the burden of proof thereof. It was said in the case of Lennon v. City of Seattle, 69 Wash. 447, 125 P. 770, that it would ordinarily be presumed, in the absence of any showing of actual negligence, that reasonable care was used in adopting plans for municipal improvements. So in Treadwell v. Yonkers, 192 App.Div. 421, 182 N.Y.S. 675, the court seems to proceed upon the theory that the burden to prove negligence, in the adoption of a plan, is upon the plaintiff. See, also, Hays v. Columbia, supra [159 Mo. App. 431, 141 S.W. 3]; Owens v. New York, 141 App.Div. 217, 126 N.Y.S.

38. We need not, however, decide the question. * * *"

To a similar effect is the holding in Martin v. City of Greensboro, 193 N.C. 573, 137 S.E. 666, 667, "we must * * * assume that the sidewalks were built * * * in pursuance of a plan approved and adopted by the authorities of the city." See also Lemieux v. City of St. Albans, 112 Vt. 512, 28 A.2d 373, 375. In that case plaintiff sued the city for an injury caused by defendant's truck. The city moved for a directed verdict, urging as one ground that the driver of the truck was in the performance of a governmental function. The motion for a directed verdict was denied. On appeal, the supreme court reversed the case with the following statement:

"The plaintiff claims that the defendant is estopped from raising this question because he says that the defense of governmental function is an affirmative one so that is must be specially pleaded to be available and that the case was tried below on this theory. An examination of the transcript discloses that the plaintiff did make the claim of affirmative defense during the trial and that the Court was 'rather inclined' to agree with him. It also appears that the defendant insisted that it was not but could come in under the general denial. This theory of the plaintiff's not being acquiesced in by both parties and by the Court the case of Cote v. Boise, 111 Vt. 343, 16 A.2d 175, cited by the plaintiff is not in point.

"That *this is not an affirmative defense* is clearly established by the cases. It is stated in 38 Am.Jur. 372 in § 665: 'Since the liability of a municipality for its torts in the performance of corporate or private functions is the exception to the general rule of immunity for tort, it behooves the plaintiff who is seeking to impose liability for negligence contrary to the general rule to aver facts sufficient to manifest his right to do so.' The text continues to the effect that *the burden is on the plaintiff to specifically allege facts show-*

*ing that the act in question was not committed in a
a governmental capacity but as a corporate function.*
See, also, 43 C.J. 1218, § 1991; Rowley v. Cedar Rapids,
203 Iowa 1245, 212 N.W. 158, 53 A.L.R. 375; City of
Bowling Green v. Bandy, 208 Ky. 359, 270 S.W. 837;
City of Tuscaloosa v. Fitts, 209 Ala. 635, 96 So. 771;
Caspary v. Portland, 19 Or. 496, 24 P. 1039, 20 Am.
St.Rep. 842." (Emphasis supplied.)

From the foregoing, it is clear that a defendant
municipality in a tort action may under a general de-
nial introduce evidence of its having acted in a govern-
mental capacity, although that fact was not pleaded.
Even though such were not the rule, plaintiff in the
present case could not complain because of defendant's
failure to so plead since evidence on the subject was
received by the court without any objection from plain-
tiff. In fact, the Defendant's Exhibit A, entitled "Plan
and Profile of Proposed State Highway, Lander Street
Paving," containing drawing of the gutter drain inlet,
was admitted by the stipulation of the parties as "plans
and specifications." A petition insufficient in some
respects may be deemed amended to conform to proof
admitted without objection. See Claughton v. John-
son, 47 Wyo. 447, 38 P.2d 612, 47 Wyo. 536, 41 P.2d
527.

Passing then to the merits of the situation, we first
consider Quest v. Town of Upton, supra, a case relied
upon by defendant and discussed by the trial court at
the time the motion for directed verdict was granted.
This case was one in which plaintiff sought to recover
against the town of Upton because a plank, covering
a gutter, turned and caused him to fall. Chief Justice
Blume in discussing that case recognized the duty of a
municipality to keep its streets and sidewalks in a rea-
sonably safe condition for the ordinary use of the pub-
lic, indicating that this was a proprietary function. But

he clarified beyond the possibility of misinterpretation the principle that a municipality is not liable for injuries resulting from a negligent plan of construction with respect to sidewalks unless the court can say that the plan is so manifestly dangerous that as a matter of law such plan of construction is negligent. It follows, therefore, that plaintiff to succeed in the present appeal must rely on evidence to support one of three sets of circumstances.

(1) The town of Lander did not accept the plan which included the gutter drain, and the dangerous nature of the drain's construction was the cause of the accident.

(2) The gutter drain plan was so manifestly dangerous that the trial court as a matter of law must deem it unsafe and declare the construction to be negligent, which negligent construction was the cause of the accident.

(3) The town of Lander in its maintenance of the gutter drain was guilty of negligence, which was the cause of the accident.

On the first point, plaintiff, in addition to urging that the matter of plans for the gutter drain was not pleaded, insisted that "the plans themselves were never approved by the Bureau of Public Roads." Apparently, plaintiff thus contends that some agency other than the municipality must approve the plan. This we do not conceive to be the law in this jurisdiction. See Quest v. Town of Upton, supra. See also 63 C.J.S., Municipal Corporations § 808:

"In some cases it has been held that, since a municipal corporation in determining the character or plan of construction of streets, sidewalks, and other public

ways acts in a legislative, quasi-judicial, and discretionary capacity, ordinarily it is not liable for injuries resulting from danger or defects inherent in the plan of construction adopted, or due solely to a mistake of judgment in adopting the plan, at least where reasonable care was used in adopting the plan. * * *"

The above authorities on this subject also call to mind the lack of merit in plaintiff's contention that "No specifications were made at all," because:

(1) The adoption of specifications is not requisite, and

(2) Defendant's Exhibit A, denominated by the parties as "plans and specifications," although not containing the full specifications for the highway, did contain drawings of the proposed gutter drain inlet.

These plans and specifications, admitted by stipulation of the parties, did contain what amounted to specifications for the gutter drain inlet insofar as the type of construction was concerned. They bore the number which was referred to in Defendant's Exhibit D, 'The Co-operative Agreement for Construction of Highway." Mr. Gard, the engineer in charge of the street improvement, testified that "the street was constructed as provided in those plans and specifications." Analysis of his entire testimony indicates his qualifications and his close association with the project. His testimony showed that according to his understanding the improvements were made in substantial conformity to the town-adopted plans, including that of the gutter drain. We think that his testimony taken as a whole fairly shows that he had knowledge of what occurred and that the town of Lander adopted the plans which were put into effect.

On the second point, we do not find from a consideration of all the testimony in the case that the plans for the gutter drain were so dangerous and unsafe as to warrant the trial court in saying that as a matter of law such construction was negligent. Actually, there was not unanimity of opinion in that regard. The witness, Gard, stated that he considered the gutter drain to be safe. The witness, Savage, husband of plaintiff, apparently considered the gutter to be a hazard. Plaintiff complains that Savage's evidence on this point was not received. We cannot agree that the witness had shown himself qualified or that the court erred in its rulings.

We come then to the third point, was the town in the maintenance of the gutter drain guilty of negligence which was the cause of the accident? Plaintiff's petition refers to the maintenance only generally when it states the conclusion that the town did negligently "construct and maintain * * * a dangerous, unguarded * * * unprotected and unmarked gutter drain." Defendant failed to attack this allegation specifically but filed a general demurrer which the court overruled. Giving plaintiff the benefit of the doubt and assuming the petition to have been sufficient on the point, let us examine the record for pertinent testimony.

Plaintiff in her brief and argument claims that although the plan called for five bars in the drain the picture (Plaintiff's Exhibit No. 3) shows only four bars and, therefore, one bar had evidently been pulled out with cleaning hooks. There is nothing in the record to substantiate this claim; and inasmuch as the fifth bar might well have been situated in such a position that it would not show in the picture, plaintiff's inference is wholly unwarranted.

Although we find some evidence that the gutter drain was not in good condition at the time of the accident, the testimony in the main is not very clear, there being no designation of the alleged improper conditions as negligent maintenance rather than negligent construction. It may be summarized as follows:

Wambolt, son-in-law of plaintiff, at different times stated his conclusion (improperly but without objection) that the gutter was a hazard and of poor construction. He also told of cars being stuck in the hole, of grass growing up through the concrete, and of the oil being broken away from around the drain. Hoyt, a resident of Lander, also discussed the cars being stuck in the hole and said that "it was a hole—the front wheel, if you pulled in there pretty slanting, you would drop down in there, and it was pretty near all you could do without somebody boosting you to get out." Richie, a former employee of the town of Lander, told how the drain would freeze up in winter, said that "there was kind of a little dip place there where water would stand there, kind of a drain to go into this thing underneath the curb, and they called it a drain"; that "they would blade up the street and they would go over it with a blade by the side of it; they didn't go over that because it was on the curb"; and that he had made up his mind that the gutter should be closed up and that it was dangerous. Richie also said that there was a cup concern, that the oil appeared to be broken away, and that the sidewalk was broken.

Fairly stated the foregoing testimony constitutes some evidence of conditions which the finders of fact would have a right to consider in determining whether or not the town was liable for a failure to maintain a portion of the street—if such conditions were actually proved to have been the cause of the injury.

The *only* evidence of the *cause* of the fall came from plaintiff in the following testimony elicited in her direct and cross-examination.

"Q. And will you describe again when you returned to our car what occurred, A. Jim Stoll was standing talking to my husband, and I spoke to Jim Stoll and went on around the car and just stepped off normally like I would any other time, and just disappeared in this hole. * * *

"Q. But you were then stepping down off of the sidewalk onto the street; is that correct? A. Yes.

"Q. There wasn't a hole in the street that you stepped in, but it was the hole under the sidewalk; is that right? A. It seemed to throw my foot when I stepped. My foot seemed to slip off of something; I don't know what.

"Q. What was the condition of this street at the time? Do you know? Was it wet or dry? A. It was in the fall. It was dry, but there was some dirt. * * *

"Q. How can, or how do you account for the fact that you slipped back under the sidewalk? A. It seemed as though something was broken there or there was a slant, and my foot just turned there on that slant, whatever it was."

These quotations being the entire evidence which, even by the most liberal construction, could constitute a causation between defendant's alleged negligence and plaintiff's injury, we now submit this testimony to close scrutiny so that we may ascertain the full effect of all of plaintiff's statements, viewed in a light most favorable to her.

Her words that "I * * * just stepped of normally like I would any other time, and just disappeared in this hole. * * *˙ My foot seemed to slip off of something; I don't know what. * * * It seemed as though something was broken there or there was a slant, and my foot just turned there on that slant, whatever it was," are so nebulous, so general, and so meaningless as to constitute no chain of causation whatever.

To justify a recovery the wrongful act charged must be the proximate or legal cause of the injury complained of. See Lemos v. Madden, 28 Wyo. 1, 200 P. 791; 15 Am.Jur., Damages § 65; 38 Am.Jur., Negligence § 51; 52 Am.Jur., Torts § 30; 65 C.J.S., Negligence §§ 104, 106.

To recapitulate, we find that the gutter drain was built according to a plan approved by the town of Lander, that the plan was not so inherently dangerous that the trial court could as a matter of law deem its construction to be negligent, that there was some evidence of defendant's negligence in the maintenance of the gutter drain but there was no proof whatever that such neglect caused plaintiff's injury.

The judgment of the trial court is affirmed.

Affirmed.